# UNITED STATES DISTRICT COURT
# SOUTHERN  DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,

      Plaintiff,

    v.

FIRST UNIVERSAL LENDING, LLC, a limited
liability company,

SEAN ZAUSNER, individually and as owner,
officer, or manager of First Universal Lending,
LLC,

DAVID ZAUSNER, individually and as owner,
officer, or manager of First Universal Lending,
LLC, and

DAVID J. FEINGOLD, individually and as
officer or manager of First Universal Lending,
LLC,

      Defendants.

**Case No. 09-82322-CIV-ZLOCH**

**PLAINTIFF FEDERAL TRADE COMMISSION'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING CLIENTS OF
FEINGOLD & KAM, L.L.C. AND TO QUASH AN UNKNOWN NUMBER OF
SUBPOENAS AND/OR MOTION TO COMPEL DEPOSITION OF PLAINTIFF'S
COUNSEL, GIDEON SINASOHN, AND REQUEST FOR A FULL EVIDENTIARY
HEARING**

-1-

Plaintiff, the Federal Trade Commission ("FTC" or "Commission") files this Response in Opposition to Defendants' Motion for Protective Order Regarding Clients of Feingold & Kam, L.L.C. ("F & K") and to Quash an Unknown Number of Subpoenas and/or Motion to Compel Deposition of Plaintiff's Counsel, Gideon Sinasohn, and Request For a Full Evidentiary Hearing as follows:

## A.
## INTRODUCTION

Defendants request that the Court: grant a Protective Order and a panoply of other relief. In support of all of these requests, Defendants have presented neither a shred of evidence nor any relevant authority.

Defendants' motion joins other attempts to misdirect the Court's attention from the real issues of this case, namely, Defendants' misrepresentations to thousands of victimized consumers across the country that Defendants would obtain for consumers mortgage loan modifications that would substantially lower their mortgage payments in all or virtually all instances.

Defendants' motion should be denied: first because Defendants come to this Court with "unclean hands;" and second, because despite Defendants' rhetoric, the FTC has lawfully obtained bank records and made lawful contact with a non-party witness.

## B.

## DEFENDANTS' "UNCLEAN HANDS" PRECLUDE
## THEIR REQUEST FOR EQUITABLE RELIEF

The "clean hands" doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument*

*Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945); see *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933). In *Precision Instrument*, the Supreme Court held that equity courts have broad discretion in their use of the "clean hands" doctrine against litigants that have acted fraudulently or deceitfully with respect to the controversy at issue. *Precision Instrument*, 324 U.S. at 814–15.

Here, Defendants have unclean hands in bringing forward a motion for equitable relief. The Order issued by the United States District Court for the Southern District of Florida on January 11, 2010 clearly sets out in its findings that the Defendants used "false and deceptive claims" (Findings of Fact at 4), offered "misleading statements" (Findings of Fact at 5–6), lied about the existence of a lending business (Findings of Fact at 6), "charged a fee ranging from $199 to $900 a month . . . for three months or more prior to doing any work" (Findings of Fact at 8), "threatened consumers who had filed complaints with the Better Business Bureau to retract their complaints" (Findings of Fact at 11), and injured consumers by "at least $14.7 million."[1] Moreover, in his Preliminary Injunction ("PI") hearing testimony, Feingold lied to the Court about his role behind the deceptive enterprise. Thus, the Court should deny Defendants' motion and any equitable relief.

## 1.    Defendants have misled consumers and the FTC.

Defendants most recent business model for luring unsuspecting consumer victims involved posing as law firms who were performing loan modification services. While consumer victims thought they were paying a law firm for loan modification services, it was actually the

---

[1]     Dkt. # 65.

Corporate Defendant, controlled by Defendants David J. Feingold ("Feingold"), Sean Zausner and David Zausner, that was taking consumers' money from consumers' bank accounts.[2]

Additionally, Defendants concealed two of their business locations from the FTC in violation of the TRO.[3]  Defendants also hid Feingold's controlling role of the Corporate Defendant.[4]

**2.      Feingold misled the Court by concealing his role as principal of the scam.**

Regarding his controlling role of the Corporate Defendant, Feingold lied to the Court under oath, "The only other document referencing my name, which Mr. Sinasohn went through was in Mr. Liggins' supplement,." "I am nothing more than their outside lawyer . . .," and "[T]here is nothing else that identifies me beyond the fact that I am an attorney"[5] Actually, outside of the courtroom, Feingold holds himself out as President and Owner of the Corporate Defendant, by signing bank documents as President of the Corporate Defendant,[6] signing a "Merchant Account Application" with Merchant e-Solutions, CB&T on February 26, 2009 as the owner of First Universal Lending, LLC,[7] and, a mere eight (8) months before his false testimony, on April 15, 2009, signing a "Merchant Processing Application and Agreement" as the 100%

---

[2]      Dkt. # 73, page 108, lines 8-16 (testimony of Patricia Christopher); page 183, line 3 - page 184, line 20 (testimony of Donald Lee Griffie).

[3]      Dkt. # 75, page 85, line 23 - page 89, line 21; page 92, line1 - page 95, line 15.

[4]      See fn. 5, 7, and 8.

[5]      Dkt. # 75, p. 56, lines 2-4, p. 57, lines 6-7 and 12-13 attached hereto as Exhibit A.

[6]      PI Exh. 19, ¶ 4 and Attachment J.

[7]      Exhibit B.

owner of First Universal Lending, LLC.[8]

Aside from Feingold's murky ownership of the Corporate Defendant and proud ownership of F & K, there are many indications that F & K is not an innocent outsider, justifying further review of F & K's business practices. For instance, the Corporate Defendant uses computers previously used by F & K, F & K files and associate offices are interspersed among the Corporate Defendants offices, the Corporate Defendant and F & K have shared the same mailing address, and the State of Maryland issued a "Cease and Desist" Order against both the Defendants and F & K for deceptive practices similar to those at issue here.[9]

Additionally, the Court ordered Feingold to provide the FTC with information that would help the FTC to understand what part of F & K bank accounts were derived from the Corporate Defendant's monies.[10] Feingold has refused. This refusal is not only contemptuous of the Court's Order but also raises suspicions as to why Defendant Feingold would refuse to comply with an Order and why he would refuse to take an action that would leave his firm with unfrozen funds.

Given the FTC's obligation to protect American consumers and the Court's Preliminary Injunction Order, it was incumbent upon Plaintiff to determine if Feingold was using his highly commingled law practice to continue the deceptive scheme the Court ordered stopped.

---

[8]    Exhibit C.

[9]    Dkt. # 71, p. 58, line 11 - p. 60, line 5; Dkt. #75, p. 56, lines 11-15; p. 64, lines 7-10; attached hereto as Exhibit D.

[10]    Dkt. #77, p. 69, lines 4-19 attached hereto as Exhibit E.

## C.
## PLAINTIFF HAS NOT OBTAINED ANY
## FEINGOLD & KAM RECORDS UNLAWFULLY

Defendants' counsel seeks to quash "subpoenas," but the FTC has issued no "ex parte subpoenas." Defendants offer no proof that Plaintiff or its counsel obtained F & K checks using subpoenas or otherwise made unlawful document collection efforts. Local Rule 26(H)(3) allows parties to file a motion for protective order "to protect a party or other person from whom discovery is sought [(1)] from having to respond to an entire set of written discovery, [(2)] from having to appear at a deposition, or [(3)] from having to comply with an entire subpoena for production or inspection." Here, Defendants' counsel presumes the existence of a subpoena without offering any proof as to its actual existence.

In fact, Plaintiff obtained the information from F & K at issue in this motion under the Court's authority. The TRO, in paragraph VII, orders that financial institutions provide checks, drafts, and deposit tickets from such accounts to Plaintiff. In response to the TRO, BB&T Bank provided to Plaintiff checks from accounts owned or controlled by Feingold, including checks from F & K accounts. Thus, Plaintiff's counsel issued no subpoenas, ex parte or otherwise. The FTC did not violate Rule 26(F), which states that "a party may not seek discovery from any source before the parties have conferred as required by Federal Rule of Civil Procedure 26(f)," because no discovery was sought.

## D.
## PLAINTIFF HAS NOT MADE UNLAWFUL
## CONTACT WITH ANY POTENTIAL WITNESSES

1.     **Plaintiff is not required to give prior notice of contact with non-parties.**

The FTC's counsel did in fact talk to one non-party to learn if that person was a victim of a loan modification scam. When counsel learned that the non-party was not a scam victim, he terminated the conversation. In *Corley v. Rosewood Care Center*, 142 F.3d 1041 (7th Cir. 1998), the Seventh Circuit acknowledged that the "Supreme Court has long recognized that as part of his investigation and trial preparation, counsel may choose to take sworn statements from individuals having knowledge of the claims or defenses at issue." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). In short, the plaintiff's interview of non-party witnesses was "perfectly valid." *Id.* at 1053 n.12. Just as the ex parte non-party interviews in *Corley* were not depositions and did not require the plaintiff to notify the defendant of the interviews, here too, Plaintiff's counsel's singular contact with a non-party witness, without the presence of a court reporter, (1) was not a deposition under Rule 30(b), (2) could not be used in trial under Rule 32, and, thus, (3) did not require prior notice to Defendants' counsel under Rule 26(f). In fact, given the suspiciously similar nature of the subject check provided by BB & T Bank to the types of payments made by scam victims in this matter, the interview with the F & K client was necessary to determine if Feingold was continuing to violate the same laws that were the subject of the TRO by using his law firm as a front in the same way he was using other law firms as fronts for his and Defendants' scam in this matter.

Until Plaintiff's counsel spoke with the consumer who signed the subject check, he did not know if that person continued to be a client of F&K or whether she was a scam victim. Because the subject check raised "red flags," it was incumbent upon Plaintiff to determine if this particular consumer was another of Defendants' fraud victims. Once it was established that this person was not a scam victim, Plaintiff's counsel terminated the conversation. Plaintiff's counsel's interaction with F & K's client was brief, cursory, and to the point, which was to learn if the

consumer had paid money to F & K money for loan modification services and had been victimized by Defendants like thousands of other consumers across the country. Nothing more.

**2.    Plaintiff's counsel has not contacted any represented party in "this matter."**

*Florida Professional Rule of Conduct 4-4.2* states that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer *in the matter*." (emphasis added)  These last three words are important and should not be ignored in applying *Rule 4-4.2*.  In discussing *Rule 4-4.2*, the Court *In re Disciplinary Proceedings Regarding Doe*, 876 F. Supp. 265, 268-69 (M.D. Fla. 1993), found that:

> Moreover, the rule concerns a lawyer's conduct "[d]uring the course of his representation of a client," and is limited to communication ***"on the subject matter of the representation"*** with a party represented by counsel "***in that matter.***" Although the Code does not define these terms, the rule appears to contemplate an adversarial relationship between litigants, whether in a criminal or a civil setting. This interpretation is consistent with the policies underlying the disciplinary rule and the ethical canon from which it derives. (emphasis added).

The comment to *Rule 4-4.2* makes it clear that every conversation is not a violation:

> [1] This rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between 2 organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter.[11]

---

[11]    http://www.law.cornell.edu/ethics/fl/code/CRule_4-4.2.htm.

The rules cited by Defendants require that, in order to prove a violation by Plaintiff, Defendants must show that Plaintiff's counsel contacted a represented party in **this matter**, Case No. 09-82322-CIV-ZLOCH, but Defendants' counsel does not allege that Plaintiff's counsel contacted a party represented **in this matter** - the FTC v. First Universal Lending, LLC, Sean Zausner, David Zausner, and David J. Feingold.  Defendants' counsel ignores the fact that the single F&K client questioned by Plaintiff's counsel had not retained counsel with respect to the FTC complaint at bar.  F&K was hired by this F&K client with regard to a separate and distinct legal matter.  Thus, *Florida Professional Rule of Conduct 4-4.2* does not apply.  As a result, Plaintiff's counsel does not need to be exempt from *Rule 4-4.2* because Plaintiff's counsel did not violate the Rule.

Moreover, this Court has not adopted the opinions of the Ethics Committee of the Florida Bar or even the decisions of the Supreme Court of Florida interpreting those rules. *C.f. In re Wilkes*, 494 F. 2d 472, 474-75 (5th Cir. 1974). *Id.* at 269.  So reference to such opinions or decisions is a red herring.

## E.

## DEFENDANTS' REQUEST TO TAKE THE DEPOSITION OF PLAINTIFF'S COUNSEL IS AN ABUSE OF THE DISCOVERY PROCESS

The Court in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir.1986) found that deposing opposing counsel, unless counsel's testimony would be critical, was a harassing adversary trial tactic that did not aid in the administration of justice, but rather prolonged and increased the costs of litigation, while demeaning the profession, and constituted an abuse of the discovery process.  Defendants' desperate attempt to misdirect the Court's

attention from Defendants' deceptive practices is not sufficient reason to allow them to waylay these proceedings with a focus on opposing counsel.  Their request to take opposing counsel's deposition should be denied.

**F.**
**CONCLUSION**

Defendants' motion is full of shrill accusations that because of some imagined government misconduct, they have suffered the slings and arrows of outrageous fortune.  But, like the idiot that struts and frets his hour upon the stage, the Defendants' motion, bereft of any evidence or relevant authority, signifies nothing.  Plaintiff respectfully submits that Defendants' unclean hands preclude them asking for equitable relief; that Plaintiff has violated no law or ethical prohibition; and that Defendants' motion should be denied in its entirety.

Dated: March 8, 2010                                    Respectfully submitted,


                                                          /s/ Gideon E. Sinasohn, Esq.
                                                        GIDEON SINASOHN
                                                        Special Florida Bar No. A55001392
                                                        Attorney for Plaintiff
                                                        Federal Trade Commission
                                                        225 Peachtree Street, Suite 1500
                                                        Atlanta, Georgia 30303
                                                        (404)656-1366 (Sinasohn)
                                                        (404) 656-1379 (Fax)
                                                        gsinasohn@ftc.gov

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,          )
                                   )          CASE NUMBER
               PLAINTIFF,          )     09-82322-CIV-ZLOCH
                                   )
        VS.                        )
                                   )
FIRST UNIVERSAL LENDING, LLC,      )
SEAN ZAUSNER, DAVID ZAUSNER,       )         VOLUME 3
AND DAVID J. FEINGOLD,             )
                                   )
               DEFENDANTS.         )
------------------------------)         MORNING SESSION


            TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING HAD
BEFORE THE HONORABLE WILLIAM J. ZLOCH, IN FORT LAUDERDALE,
BROWARD COUNTY, FLORIDA, ON WEDNESDAY, DECEMBER 9, 2009, IN
THE ABOVE-STYLED MATTER.


APPEARANCES:

FOR THE GOVERNMENT:    GIDEON E. SINASOHN, AND
                       HAROLD E. KIRTZ, ESQS.
FOR THE DEFENDANTS:    DAVID J. FEINGOLD, ESQ.

FOR THE RECEIVER:      TAMA B. KUDMAN, AND
                       MICHELLE R. BERG, ESQS.



                   CARL SCHANZLEH

              OFFICIAL COURT REPORTER

                 U. S. COURTHOUSE

             299 E. BROWARD BLVD., 202B

           FORT LAUDERDALE, FLORIDA 33301

                  954 769-5488

1   TITLE.

2        THE ONLY OTHER DOCUMENT REFERENCING MY NAME,

3   WHICH MR. SINASOHN WENT THROUGH WAS IN MR. LIGGINS'

4   SUPPLEMENT.   AND IN THAT SUPPLEMENT, WHICH I UNFORTUNATELY

5   JUST MIXED WITH THE OTHER STACK, IN THAT SUPPLEMENT YOU

6   WILL SEE THERE IS A PAYCHECKS PAYROLL DOCUMENT.   AND ON

7   THAT PAYCHECKS PAYROLL DOCUMENT IT SAYS, "FIRST UNIVERSAL

8   LENDING," AND BELOW IT, IT HAS THE ADDRESS AND IT SAYS,

9   "DAVID FEINGOLD, GEN.MAN."   AND IF YOU LOOK AT THAT ADDRESS

10   IT SAYS 3300 PGA BOULEVARD.

11        WHAT YOU WILL FIND OUT IS THAT THE LAW FIRM OF

12   FEINGOLD & KAM HAD BEEN IN BUSINESS AT LEAST 10 YEARS PRIOR

13   TO FIRST UNIVERSAL.   THAT FIRST UNIVERSAL USED THE SAME

14   MAILING ADDRESS BECAUSE, AS I EXPLAINED, IT STARTED IN MY

15   CONFERENCE ROOM.   AS THE WALLS EXPANDED AND THEY MOVED, ON

16   THE MAIN DOOR HAPPENED TO BE THERE AND THERE WAS ONE

17   MAILING ADDRESS.

18        WHEN YOU REGISTER WITH PAYCHECKS THEY HAVE A

19   SECURITY PROVISION.   THEY DO NOT WANT MULTIPLE NAMES

20   RECEIVING PAYROLL.   IT KIND OF MAKES SENCE.   THEY DON'T

21   WANT MULTIPLE PEOPLE CALLING UP AND SAYING, "HEY, DELIVER

22   THESE LIVE CHECKS TO SOMEBODY ELSE."   I LEARNED THAT

23   BECAUSE THAT ADDRESS FOR THE LAST PRIOR 10 YEARS I HAD BEEN

24   RECEIVING THE PAYROLL UNDER FEINGOLD & KAM, DAVID FEINGOLD,

25   GEN.MEN. 3300 PGA, WHEN THEY TYPED IN FIRST UNIVERSAL'S

1    ADDRESS, THE SAME ADDRESS 3300 IT AUTOMATICALLY POPULATED

2    DAVID FEINGOLD, GEN.MAN.  I AM THE GENERAL MANAGER OF

3    FEINGOLD & KAM.  OKAY?

4         MR. ZAUSNER HAD NO PROBLEM WITH THEIR PAYROLL

5    BEING DELIVERED TO MY LAW OFFICE.  NO PROBLEM WHATSOEVER.

6    BECAUSE THAT'S THE WAY THE MAIL CAME IN.  I AM NOTHING MORE

7    THAN THEIR OUTSIDE LAWYER, AND IF YOU HAD CONTACTED

8    PAYCHECKS OR MERELY ASKED ME YOU WOULD HAVE SEEN, YOU WOULD

9    HAVE KNOWN THAT THAT IS HOW THAT WAS MARKED IN THE SYSTEM.

10   AND IF YOU SUBPOENAED PAYCHECKS YOU WOULD HAVE SEEN THAT AS

11   WELL.

12        THERE IS NOTHING ELSE THAT IDENTIFIES ME BEYOND

13   THE FACT THAT I AM AN ATTORNEY.  THAT'S WHAT I DO.  AND

14   IF -- IF I WAS ANYTHING BEYOND AN ATTORNEY THEN I WOULD

15   HAVE HAD A HECK OF THE TIME EXPLAINING HOW I HAVE DONE SO

16   MANY TRIALS AND REPRESENTED SO MANY PEOPLE.  I DO, AND SO

17   IT IS CLEAR, SPEND TIME REPRESENTING FIRST UNIVERSAL.

18        I DO GO TO THEIR EXECUTIVE COMMITTEE MEETINGS AS

19   A LAWYER TO HEAR LEGAL ISSUES.  I DO MEET WITH GALE ON

20   FRIDAYS AND DAVE AND SEAN ON FRIDAYS, AND I MEET WITH

21   MIRANDA ON FRIDAYS FOR LEGAL ISSUES, AND I DO HAVE A

22   COMPLIANCE MEETING EVERY FRIDAY WITH THE BACK OFFICE PEOPLE

23   WHERE WE TALK ABOUT MORTGAGE ISSUES, COMPLIANCE ISSUES,

24   AUTO LOANS, MEDICAL BILLS, COLLECTION AGENCIES, FAIR DEBT

25   COLLECTIONS PRACTICES ACT, AND ALL THE OTHER LEGAL ISSUES

# EXHIBIT B

2009  12:56   5616388936          FEINGOLD & KAM          PAGE  02

MESE   109 05839158

**MERCHANT e-SOLUTIONS**  **CB&T**

**Merchant Account Application**

## 1. Business Information

Control #   DURANGO - BRAD JESS

| | |
|---|---|
| Type of Business: | First Universal Lending, LLC |
| ☑ Sole Proprietorship | Business Legal Name |
| ☑ Corporation | First Universal Lending, LLC |
| ☐ Partnership | Business DBA (printed on card/sales statement) |
| ☐ Medical or Legal Corporation | |
| ☐ Association/Estate/Trust | |
| ☐ Tax Exempt | Federal Tax ID |
| ☐ Government | (561) 340-1212 |
| ☐ Limited Liability Company | Business Phone Number |
| ☐ Other | 8100 PGA Blvd., Ste 201 |

Date Business Established (Mo./Year): 01 / 2002

Contact Name: David Feingold
Contact Phone #: 561-340-1212
Contact e-Mail Address: david@FKFirm.com
Mailing Address Name: First Universal Lending, LLC

Industry (Restaurant, Hotel, etc.): Loan Modification
Type of Goods or Services Sold: Service: Loan Modification

Type of Application:
☑ Single Location
☐ Multiple Locations (Chain)
☐ Additional Chain Location
Number of Locations   1

Business Street Address Line 1: 8100 PGA Blvd., Ste 201
Business Street Address Line 2:
City: Palm Beach Gardens   State: FL   Zip: 33418
Business e-Mail Address: david@FKFirm.com

Mailing Address:
City: ___ State: ___ Zip: ___
Business Fax Number:

Type of Business Location:
☐ Retail Storefront
☐ Internet Storefront
☑ Business Office
☐ Residence
☐ Bank
☐ Other
Years at Main Location   7
Bank Referral:

## 2. Merchant History

| | | |
|---|---|---|
| Ever Accepted Credit Cards Before ? | ☑ Yes ☐ No | If Yes, Name of Processor: Amex, First Data |
| Ever Had an Account Cancelled ? | ☐ Yes ☒ No | If Yes, Name of Processor: |
| Reason for Cancellation: | | Date of Cancellation: |

## 3. Business Checking

Bank Name: Enterprise Bank
Checking Account #: 011 1716
Transit Routing #: 087013862
Years Open: ⟨circled⟩

Bank Address: 11811 US Highway One
City: North Palm Beach
State: Florida
Zip: 33408

## 4. Business Owners/Officers/Partners

| Name of Primary Owner/Officer/Partner | Social Security # | Percent Owned | Phone # | Owner/Officer Since |
|---|---|---|---|---|
| David Feingold | [redacted] | 100 | [redacted] | 2002 |

Residence Address: 102 Via Capri   City: Palm Beach Gardens   State: Florida   Zip: 33418   Title: Owner

| Name of Secondary Owner/Officer/Partner | Social Security # | Percent Owned | Phone # | Owner/Officer Since |
|---|---|---|---|---|
| | | | | |

Residence Address: ___   City: ___   State: ___   Zip: ___   Title: ___

## 5. Transaction Information

Refund Policy: ☑ Refund in 30 Days or Less   ☐ No Refund/Exchange   ☐ Exchange Only   ☐ N/A

| | | | | |
|---|---|---|---|---|
| ☑ Visa® / MasterCard® | Total Monthly Sales: 1,000,000. | Monthly Visa/MC Sales: 1,000,000 | Avg Ticket 550.00 | % of MOTO: 100 |
| ☑ American Express® | 69 # | 88A % | ☐ Soft Dial | |
| ☐ Discover/Novus® | Merchant #: | RAP % | ☐ Debit Cards   PCS # for EBT | |
| ☐ Diners®/Carte Blanche® | Merchant #: | | ☐ Check Authorization Service   Name of Provider: | Check %: |
| ☐ JCB® | Merchant #: | | | |

## 6. Product Selection

| | Device | Make | Model | Quantity | Rent/Buy Own |
|---|---|---|---|---|---|
| ☐ Dial Terminal | Terminals | | | | |
| | Printers | | | | |
| | Pinpads | | | | |
| | Imprinters | Standard | | | |
| ☑ Internet | URL Address: | | | | |
| ☑ Personal Computer | POS Partner 2000 (Win 98 / NT4, 32 BIT, TCP / IP) | | | | |
| ☐ Dial/PC | Transaction Authorization & Capture by Telephone | | | | |
| ☐ Other Product | Name of Vital Certified Product: | | | | |

## 7. Dial Terminal Features

Phone Training for Merchant? ☐ Yes ☑ No

| | | |
|---|---|---|
| ☐ Access Code (# to dial out of business): | ☐ Invoice it Prompt On | ☐ Terminal Reminder to Check Totals (VeriFone only) |
| ☐ Auto Batch Close  HR:  MIN: | ☐ Fraud Control On | HR: ___ MIN: ___ ☐ AM ☐ PM |
| ☐ Reset Reference # Daily | ☐ Password Protect On | ☐ Tip Option On |
| ☐ Receipt Header Line 4: | ☐ AM ☐ PM | ☐ Clerk Enabled |
| ☐ Receipt Header Line 5: | | |
| ☐ Receipt Footer: | | |

MeS 622707

Copy to MeS          Copy to Merchant

2009  12:56   5616308936                    FEINGOLD & KAM                    PAGE  03



**CB&T**
EQUIPMENT BANK & TRUST

# Pricing Schedule

By signing this Merchant Application, Merchant understands the rates and fees stated below correspond to the volume and average ticket indicated on page 1 of the Application. In the event Merchant's actual activity is less than the volume and average ticket on page 1, Merchant is subject to an increase in rates and fees.

| Business Name (as shown on Application) | Contact Name | Phone Number |
|---|---|---|
| First Universal Lending, LLC | David Feingold | 561-340-1212 |

## 1. Visa/MasterCard Rates & Fees   Visa Payment Options: ☐ Credit/Business Cards   ☐ Consumer Debit/Prepaid Cards   ☒ Both

| | | | |
|---|---|---|---|
| ☐ Fixed Rate: $25 Minimum Discount, Fixed Discount Rate | | Rate | % |
| ☐ Interchange: $25 Minimum Discount, Actual Interchange, Per Item Fee | | Per Item | |
| ☒ Combination: $25 Minimum Discount, Fixed Discount, Per Item Fee | | Rate | 4.25% + Per Item  0.30 ¢ |
| Priced as: Internet   Mid/Non-qual Surcharges:  Mid-qual adds 0.65% + $0.10, Non-qual adds 1.25% + $0.10 | | | |

## 2. Other Transaction Fees

| | | | 3. Miscellaneous Fees | | |
|---|---|---|---|---|---|
| Diners/Carte Blanche | 0.25 ¢ | | New Account Application (One Time) | $ | N/A |
| Discover/Novus | 0.25 ¢ | | New Account Setup (One Time) | $ | N/A |
| JCB | 0.25 ¢ | | Internet Service Setup (One Time) | $ | N/A |
| American Express | 0.25 ¢ | | Internet Provider Monthly Service Fee | $ | N/A |
| Debit Cards | 0.25 ¢ | | Chargebacks (per Chargeback) | $ | 25.00 |
| Check Verification | 0.25 ¢ | | Merchant Statement (Monthly) | $ | 10.00 |
| Dial Pay Authorization & Capture | N/A ¢ | | Monthly Service | $ | 20.00 |
| Internet Provider Transaction Fee | N/A ¢ | | Web Reporting (Monthly) | $ | included |

## 4. Equipment/Software Fees

| Device | Rent or Purchase | Per Item | Quantity | Total |
|---|---|---|---|---|
| Terminal/Printer Set | N/A | | | |
| Terminal/Printer/Pinpad Set | N/A | | | |
| Terminal | N/A | | | |
| Printer | N/A | | | |
| Pinpad | N/A | | | |
| Imprinter | N/A | | | |
| PC Software License | N/A | | | |
| Monthly Support (Merchant Owned Equipment) | N/A | | | |

**Third Party Disclosure** Names of companies associated with Merchant who have access to transaction information. Failure to disclose this information can result in account cancellation.

---- List any vendors assisting with your processing; if any. If none, write "none". ---

| | Subtotal | N/A |
|---|---|---|
| | Sales Tax (if necessary) | |
| | Total | N/A |

## Merchant Signatures

By submitting this Merchant Account Application, Merchant: 1) Certifies that all information provided in this Application is correct, 2) Understands additional information may be needed before this Application can be fully evaluated, 3) Has reviewed and accepted all terms of the attached Merchant Agreement, Pricing Schedule, Merchant Restrictions Addendum, Special Service Addendum, and Card Not Present Addendum, 4) Authorizes credit and debit entries to Merchant's business checking account. 5) Agrees to notify Processor or Bank if any information in this Application changes, 6) Understands that incomplete or inaccurate information may result in account denial or cancellation, 7) Agrees that in the event the Merchant Agreement is modified, continuing to process transactions constitutes acceptance of the revised Merchant Agreement, 8) Authorizes the request of consumer and business credit reports from consumer and business credit reporting agencies, and verification of all information contained in this Application.

| Printed Name Owner/Officer/Partner 1   David Feingold | Signature | Date  2-26-09 |
|---|---|---|
| Printed Name Owner/Officer/Partner 2 | Signature | Date |

## For Processor & Bank Use   When visiting the merchant's place of business, please answer the following questions and sign below.

Address of location inspected
☐ Business Address   ☐ Mailing Address   ☐ Other

Does name posted at business match business name on application?                    Are store hours posted?

Does location have appropriate business signage?                    Did you view merchant's inventory?

Was inventory consistent with merchant's type of business?                    # of employees?

Does inventory appear to be adequate for the sales volume indicated on the application?

| Referral Bank Name   DURANGO MERCHANT SERVICES | Referral Bank Representative Name | Referral Bank Representative Phone # | Referral Bank Representative Signature |
|---|---|---|---|
| Merchant Services Processor   Merchant e-Solutions (MeS) | Processor Representative Name | Processor Representative Phone # | Processor Representative Signature |
| Association Member Bank   Columbus Bank & Trust Merchant Services, P.O. Box 23019, Columbus GA 95054 (706) 649-4900 | | | Association Member Signature |

Merchant e-Solutions, 920 N. Argonne Ste 200, Spokane WA 99212, Customer Service 888-288-2692, Fax 509-921-6005

/2009  12:56   5616388936                    FEINGOLD & KAM.                    PAGE  04



**Notifications and Disclosures**

**Card Association Disclosures**

Under the guidelines provided by the Card Associations we are now mandated to provide you, the merchant, with the following information and where applicable require you to comply. The member bank that has approved your acceptance of bankcards is Columbus Bank & Trust, with a primary location at 1125 1st Avenue, Columbus, GA 31901. The member bank can also be contacted at 706-649-4808.

The member bank has important responsibilities in bankcard acceptance:
- It is the only entity approved to extend bankcard acceptance to merchants.
- The member bank is a party to your Merchant Agreement.
- The member bank is responsible for educating merchants on the Operating Regulations for which all merchants must comply.
- All settlement funds are provided through the member bank.
- All merchant reserves derived from settlement (if required) will be held at the member bank.

As a merchant, there are responsibilities that will be required in addition to the terms in your Merchant Agreement:
- Merchants must ensure compliance with cardholder data security and storage requirements.
- Merchants must maintain fraud and chargeback thresholds.
- Merchants must review and understand the terms of the Merchant Agreement.
- Merchants must comply with the Card Association Operating Regulations.

By signing at the bottom of this form, you (Merchant) confirm that you have read, understood and agree to abide by the above disclosures.

**Patriot Act Notification and Disclosure**

TO HELP THE GOVERNMENT FIGHT THE FUNDING OF TERRORISM AND MONEY LAUNDERING ACTIVITIES, FEDERAL LAW REQUIRES ALL FINANCIAL INSTITUTIONS TO OBTAIN, VERIFY, AND RECORD INFORMATION THAT IDENTIFIES EACH INDIVIDUAL OR BUSINESS WHO OPENS AN ACCOUNT. WHAT THIS MEANS FOR YOU: WHEN YOU OPEN AN ACCOUNT, WE WILL ASK FOR YOUR NAME, ADDRESS, DATE OF BIRTH, AND OTHER INFORMATION THAT WILL ALLOW US TO IDENTIFY YOU. WE WILL ALSO ASK TO SEE YOUR DRIVER'S LICENSE AND/OR OTHER IDENTIFYING DOCUMENTS.

**1. BUSINESS IDENTIFICATION** (MINIMUM OF ONE BOX MUST BE CHECKED AND COMPLETED, AND SUPPORTING DOCUMENTATION MUST BE PROVIDED)

☐ Government Issued Business License
   Identification Number _____   Place of Issuance _____   Date of Issuance _____   Expiration Date _____

☑ Tax Return
   I.R.S. Employer Identification Number __04 · 5711978__   Type of Taxes Filed __1065__   Place of Issuance __FlA__   Date Filed __06 ½ 07__

☐ Corporate Resolution
   Place of Issuance _____   Date Filed _____

☐ Articles of Incorporation
   Place of Issuance _____   Articles of Incorporation File Date _____

☐ Partnership Agreement
   Name of Who Executed Partnership Agreement _____   Place of Issuance _____   Date of Agreement _____

☑ Business Financial Statements
   Type: ☑ Balance Sheet  ☑ Income Statement  ☑ Statement of Cash Flows   Date __Dec. 08__   Place of Issuance __Florida__

**2. PERSONAL IDENTIFICATION** (MINIMUM OF ONE BOX MUST BE CHECKED AND COMPLETED, AND SUPPORTING DOCUMENTATION MUST BE PROVIDED)

☑ Driver's License   ☐ Passport   ☐ Mexican Consulate ID*   ☐ Military ID*   ☐ Resident Alien ID*

Number on ID __F524-170-66-336-0__ Place of Issuance __Florida__   Date of Expiration __09.16.2011__

*If option is selected, the following credit card information is required:

Type of Card _____   Name of Card Issuer _____   First 4 Digits of Card Number _____   Expiration Date _____

**Signatures**

| | |
|---|---|
| Merchant DBA Name | |
| First Universal Lending, LLC | |
| Merchant Signature | Printed Name and Title of Merchant Signer   Date |
| | David Feingold                              **2-26-09** |
| Merchant Services Representative Signature** | Printed Name of Merchant Services Representative   Date |

** BY SIGNING ABOVE, YOU HEREBY ACKNOWLEDGE AND AGREE THAT THE INFORMATION LISTED HEREIN IS TRUE AND CORRECT AND WAS PERSONALLY OBSERVED ON THE INDICATED DOCUMENTS.

Ma8 022707

# EXHIBIT C



# MERCHANT PROCESSING APPLICATION AND AGREEMENT

| | | |
|---|---|---|
| Sales Office Name | | Portfolio | Garrett Logan |
| Sales Rep Name | Kelly Bruce-King | Application Date | 4/8/2009 |

## 1. GENERAL INFORMATION   2. BUSINESS LOCATION INFORMATION   3. BUSINESS STRUCTURE

| | |
|---|---|
| **Client's Business Name (Doing Business As)** <br> First Universal Lending LLC | **Client's Corporate or Legal Name** <br> First Universal Lending LLC |
| **Location Address** <br> 5100 PGA Blvd Ste 201 | **Corporate Address (If Different Than Location)** <br> 5100 PGA Blvd Ste 201 |
| **City** Palm Beach Gardens   **State** FL   **Zip** 33416 | **City** Palm Beach Gardens   **State** FL   **Zip** 33416 |
| **Location Phone** 561-630-6707   **Location Fax** | **Contact Name** David Feingold   **Contact Phone** 561-530-6707 |
| **Customer Service Phone** 561-630-6707 | **Email Address** icash@icashsystems.com |
| **Business Website Address** www.icashsystems.com | **Fed Tax ID #**                          **D&B#** |

| | |
|---|---|
| **Send retrieval/chargeback requests to** <br> X   Corporate Address _____   Location Address _____ | **Date Business Started** 01/2002   **Length Current Ownership** 7 Years |
| | **Send monthly merchant statements to** <br> X   Corporate Address _____   Location Address _____ |
| _____ Sole Prop      _____ Partnership | X LLC/LLP      _____ C Corporation |
| _____ S Corporation      _____ Govt. (Local/State/Federal) | _____ 501c/Tax Ex. |

## 4. OWNERS/PARTNERS/OFFICERS   5. TRADE REFERENCE

| OWNER/PARTNER/OFFICER 1 | OWNER/PARTNER/OFFICER 2 | TRADE REFERENCE |
|---|---|---|
| **Name** David Feingold | **Name** | **Business Name** |
| **Title** President   **% Ownership** 100 % | **Title**   **% Ownership** | **Business Address** |
| **Home Address** 102 Via Capri | **Home Address** | **City**   **State**   **Zip** |
| **City** Palm Beach Garden   **State** FL   **Zip** 33418 | **City**   **State**   **Zip** | **Contact** |
| **Telephone** 561-319-0245 | **Telephone** | **Telephone** |
| **Social Security #** XXX-XX-XX17   **Date of Birth** | **Social Security #**   **Date of Birth** | **Account #** |
| **Bankruptcies?** _____ Yes   X No <br> **Date Discharged:** _____ | **Prior Bankruptcies?** _____ Yes   X No <br> **Date Discharged:** _____ | |

## 6. NATURE OF BUSINESS   7. TRANSACTION INFORMATION

**Business Type:**   Internet

| | | | | | |
|---|---|---|---|---|---|
| **Requested Monthly MC/VISA/Discover Network Volume** | $250,000.00 | **Card Present Swiped** | 0 % | **Sales to Consumers** | 50 % |
| **Requested Average MC/VISA/Discover Network** | $550.00 | **Card Present Not Swiped** | 0 % | **Sales to Business** | 50 % |
| **Highest MC/VISA/Discover Network Ticket** | $1,000.00 | **MOTO** | 0 % | **Sales to Govt.** | 0 % |
| **Seasonal Merchant?**   Yes   No | | **Internet (Ecommerce)** | 100 % | **Days to Delivery** | |

**Description of products or services sold**
Loans

**Describe your return policy**

| | |
|---|---|
| | **Prior Processor** <br> None |

PPS1107 : 27388                              Page 1 of 4

## 8. BANKING ACCOUNT INFORMATION

| Deposit Bank Name | Routing# | Account# | ACH Method: |
|---|---|---|---|
| Bank Address Location | Bank Phone | **X** Checking _____ Savings | **X** Combined _____ Individual |

## 9. SERVICE ACCEPTANCE AND FEE SCHEDULE

Select all card types you wish to accept (See Section 1.9 of the Program Guide for details regarding limited acceptance)

**X** Visa Credit    **X** Visa Non-PIN Debit    **X** MasterCard Credit    **X** MasterCard Non-PIN Debit    **X** Discover Network    _____ PIN Debit

Select VI/MC/Discover Network Discount Plan (Based on Gross Sales Volume)

**X** Tiered Basic

_____ Pass Through I/C    _____ Enhanced Recover Reduction (ERR)

Select PinDebit Discount Plan:

_____ Pin Debit Network Fee Pass-through

Discount Payment Method: **X** Daily    _____ Monthly

Assessments: **X** Included    _____ Bill Separately

(If Pass Through I/C - Assessments MUST Bill Separately)

| QUALIFICATION | DISC. FEE (%) | PER ITEM ($) | QUALIFICATION | DISC. FEE (%) | PER ITEM ($) | QUALIFICATION | DISC. FEE (%) | PER ITEM ($) |
|---|---|---|---|---|---|---|---|---|
| Credit Qual | 4.95 | $0.35 | Credit Qual | 4.95 | $0.35 | Credit Qual | 4.95 | $0.35 |
| Credit Mid-Qual | 5.45 | $0.35 | Credit Mid-Qual | 5.45 | $0.35 | Credit Mid-Qual | 5.45 | $0.35 |
| Credit Non-Qual | 5.75 | $0.35 | Credit Non-Qual | 5.75 | $0.35 | Credit Non-Qual | 5.75 | $0.35 |
| Debit Qual | 4.95 | $0.35 | Debit Qual | 4.95 | $0.35 | Debit Qual | 4.95 | $0.35 |
| Debit Mid-Qual | 5.45 | $0.35 | Debit Mid-Qual | 5.45 | $0.35 | Debit Mid-Qual | 5.45 | $0.35 |
| Debit Non-Qual | 5.75 | $0.35 | Debit Non-Qual | 5.75 | $0.35 | Debit Non-Qual | 5.75 | $0.35 |
| Pass Through IC | 0.00 | $0.00 | Pass Through IC | 0.00 | $0.00 | Pass Through IC | 0.00 | $0.00 |
| ERR | 0.00 | $0.00 | ERR | 0.00 | $0.00 | ERR | 0.00 | $0.00 |
| | | | | | | Voyager | 0.00 | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| Visa/MC/Discover Network | $0.35 | Voice/ARU Auth | $1.00 | Minimum Monthly Fee | $0.00 |
| Non Bankcard | $0.35 | Voice AVS | $3.00 | Wireless Fee | $0.00 |
| Pin Debit | $0.00 | Check | $0.00 | PIN Debit Monthly Fee | $0.00 |
| Electronic AVS | $0.05 | EBT Auth | $0.00 | PCI Maintenance Fee | $9.95 |

| | | | | | |
|---|---|---|---|---|---|
| Statement Fee | $10.00 | E-Merchant View | $0.00 | Monthly Service Fee | $25.00 (per location) |
| Merchant MX Fee | $0.00 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Sales Transaction Fee | $0.00 (per item) | Chargeback Fee | $15.00 (per item) | Annual Fee | $100.00 (per location) |
| Return Transaction Fee | $0.00 (per item) | Retrieval Fee | $10.00 (per item) | ACH Reject Fee | $20.00 |
| Batch Fee | $0.00 (per item) | | | | |

In the event that this Agreement is terminated early, Merchant will be responsible for the payment of a $270.00 early termination fee in accordance with Section 35.3 of the Merchant Program Guide.

## 10. OTHER CARD TYPES

**Currently Accepting AMEX**   Yes   No

Existing Amex SE#

**Order New?**   Yes   No

By signing below, I represent that I have read and am authorized to sign and submit this application on behalf of the entity above and all information I have provided herein is true, complete, and accurate. I authorize American Express Travel Related Services Company, Inc. ("American Express") to verify the information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies. I authorize and direct American Express to inform me directly, or through the entity above, of reports about me that American Express has requested from consumer reporting agencies. Such information will include the name and address of the agency furnishing the report. I also authorize American Express to use the reports from consumer reporting agencies for marketing and administrative purposes. I understand that upon American Express' approval of the entity indicated above to accept the American Express Card, the terms and conditions for American Express® Card Acceptance ("Terms and Conditions") will be sent to such entity along with a Welcome Letter. By accepting the American Express Card for the purchase of goods and/or services, or otherwise indicating its intention to be bound, the entity agrees to be bound by the Terms and Conditions. Rate _____

Additional fees:   Retail: $0.10 Trans Fee + 0.30% CNP Downgrade
Services, Wholesale & All Other:       $0.15 Trans Fee

INITIAL HERE TO AGREE

**Currently Accepting JCB?**   Yes   No

JCB #  _____

To order call JCB at 1-800-366-4522

**Currently Accepting EBT Food Stamps ?**   Yes   No

EBT Food Stamps #  _____

(Number(s) must be obtained through the state department of agriculture)

**Currently Accepting EBT Cash Benefit**   Yes   No

EBT Cash Benefit #  _____

**Order Wright Express ?**   Yes   No
(Must attach WEX paper work)

**Order Voyager ?**   Yes   No

**Order Check Services?**   Yes   No
(Must attach addendum with app. copy)

**Order Gift Card?**   Yes   No
(Must attach addendum with app. copy)

**Order E-Merchant View?**   Yes   No

## 11. EQUIPMENT

| No | Equipment Type | Product Name | Deployment | Deployed By | IP Connection | Platform |
|----|----------------|--------------|------------|-------------|---------------|----------|
| 1 |  |  |  |  | No |  |

Do you use any third party to store, process, or transmit cardholder data?     Yes    X  No

If yes, give name/address:

Please identify any software used for storing, transmitting, or processing card transactions or authorization requests

**ORDER LEASE** _____   Lease Company:  First Data Global Leasing     Lease Term:  _____  Mos.   Annual Tax Handling Fee

Total Monthly Lease Charge  _____   w/o taxes, fates fees and other charges that may apply - See Lease Agreement for details.

This is a **NON-CANCELLABLE** lease for the full term indicated       (Client's initials: _____ )

## 11b. CARD NOT PRESENT INFORMATION

If you process more than 30% of your bankcard transactions, or volume, without swiping and/or examining the credit card, please complete this section and provide the information requested.

1. Please submit your Product catalog; brochures; promotional materials; a current price list; and a copy of your service agreement with card holder if applicable. If on the Internet, please include screen-prints of your website address if your site is not yet active.

2. Internet please check your type of business:

____ Auction     ____ Internet Service Gateway     ____ Web Hosting     ____ Domain Registration     ____ Web page Design
____ Selling Digital Service     ____ Advertisement     ____ Selling Hard Goods
X  Other:   loans

3. How will the product be advertised or promoted?

4. Billing Methods:     ____ Monthly - _____     ____ Quarterly - _____
____ Yearly - _____     ____ One Time - _____     ____ Hourly - _____

If using the internet, list encryption method, vendor, and controls used to secure transaction information
ssl

5. List the name(s) and address(es) of the vendors from which supplies are purchased.

6. Who performs product/service fulfillment? If direct from vendor please provide Vendor Name, address and phone number in full

7. Please describe how a sale takes place from beginning of order until completion of fulfillment

PPS1107 : 27388

**12a. SITE INSPECTION (Completed by Sales Agent)**

I have personally conducted a Site Inspection for this merchant, visually inspected the merchant's inventory (if applicable) and represent that the information in this merchant application is accurate, as to the best of my knowledge. I am subject to criminal penalties and/or financial losses for false or misleading information.

Sales Agent Name (printed) _____     Signature X _____

**12b. Annotation**

**13. SIGNATURES**

Client certifies that all information set forth in this completed Merchant Processing Application is true and correct and that Client has received a copy of the Program Guide (Version PPS1107) and Confirmation Page, which is part of this Merchant Processing Application, and by this reference incorporated herein. Client further agrees that Client will not accept more than 20% of its card transactions via mail, telephone or Internet order. However, if your Application is approved based upon contrary information stated in Section 7, Transaction information section above, you are authorized to accept transactions in accordance with the percentages indicated in that section. Client authorizes PRIORITY PAYMENT SYSTEMS ("PRIORITY") and BancorpSouth ("BANK") and their respective agents to investigate the references, statements and other data contained herein and to obtain additional information from credit bureaus and other lawful sources, including persons and companies names in this Merchant Processing Application. If the Application is approved, each of the undersigned also authorizes us to obtain subsequent consumer reports in connection with the maintenance, updating, renewal or extension of the Agreement. Client authorizes PRIORITY and BANK and their agents (a) to procure information from any consumer reporting agency bearing his/her personal credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and (b) to contact all previous employers, personal references and educational institutions. Client agrees to all the terms of this Merchant Processing Application and Agreement. This Merchant Processing Application and Agreement shall not take effect until Client has been approved and this Agreement has been ...pted by PRIORITY and BANK.

Client's Business Principal / Officer

Signature X _____     Title _Owner_

Print Name of Signer _David Feingold_     Date _4/15/07_

Signature X _____     Title _____

Print Name of Signer _____     Date _____

Personal Guarantee The undersigned guarantees to PRIORITY and BANK the performance of the Agreement, and First Data Lease if applicable, and any addendum thereto by Client, including payment of all sums due and owing and costs associated with the enforcement of the terms thereof. PRIORITY and BANK shall not be required to first proceed against the Client or enforce any other remedy before proceeding against the undersigned individual. This is a continuing guarantee and shall not be discharged or affected by the death of the undersigned and shall bind the heirs, administrators, representatives and assigns and be enforced by or for the benefit of any successor of PRIORITY or BANK. The term of this guarantee shall be for the duration of the Merchant Processing Application and Agreement and any addendum thereto and shall guarantee all obligations which may arise in connection with my activities during term thereof through enforcement shall be sought subsequent to any termination.

Personal Guarantee

Signature X _____     Print Name: _David Feingold_     Date _4/15/07_

Personal Guarantee

Signature X _____     Print Name: _____     Date _____

Accepted By
Priority Payment Systems, LLC
P.O. BOX 246,  Alpharetta, GA 30009-0246

BancorpSouth Bank,
2778 West Jackson St., Tupelo MS 38801

Signature X _____

Signature X _____

Title _____ Date _____

Title _____ Date _____

PPS1107 : 27388

PPS1107

## CONFIRMATION PAGE

**Please read the Merchant Services' Program Guide in its entirety. It describes the terms under which we will provide merchant processing services to you.**

From time to time you may have questions regarding the contents of your Agreement with us. The following information summarizes portions of your Agreement in order to assist you in answering some of the questions we are most commonly asked:

1. Your discount rates are assessed on transactions that qualify for certain reduced interchange rates imposed by MasterCard and Visa. Any transactions that fail to qualify for these reduced rates will be charged an additional fee (see Section 17).

2. We may debit your bank account from time to time for amounts owed to us under the Agreement.

3. There are many reasons why a Chargeback may occur. When they occur we will debit your settlement funds or settlement account. For a more detailed discussion regarding Chargebacks see Section 10.

4. If you dispute any charge or funding, you must notify us within 45 days of the date of the statement where the charge or funding appears, or should have appeared.

5. The Agreement limits our liability to you. For a detailed description of the limitation of liability see Section 19.

6. We have assumed certain risks by agreeing to provide you with Card processing. Accordingly, we may take certain actions to mitigate our risk, including termination of the Agreement, and/or hold monies otherwise payable to you (see Section 22, Term; Events of Default and Section 23, Reserve Account; Security Interest), under certain circumstances.

7. By executing this Agreement with us you are authorizing us to obtain financial and credit information regarding your business and the signer and guarantors of the Agreement until all your obligations to us are satisfied.

8. The Agreement contains a provision that in the event you terminate the Agreement early, you will be responsible for the payment of an early termination fee as set forth in Section 35 and in Section 9 of this Application under "Service Fee Schedule."

9. If you lease equipment from Processor, it is important that you read Section 33. This lease is a non-cancelable lease for the full term indicated.

### 10. Association Disclosure

**Member Bank Information: BancorpSouth Bank**

The Bank's mailing address is BancorpSouth Bank, 2778 West Jackson Street, Tupelo, MS 38801, and its phone number is 1-800-844-2477.

**Important Member Bank Responsibilities:**

(a) The Bank is the only entity approved to extend acceptance of Association products directly to a Merchant.

(b) The Bank must be a principal (signer) to the Merchant Agreement.

(c) The Bank is responsible for educating Merchants on pertinent Association Rules with which Merchants must comply.

(d) The Bank is responsible for and must provide settlement funds to the Merchant.

(e) The Bank is responsible for all funds held in reserve that are derived from settlement.

**Important Merchant Responsibilities:**

(a) Ensure compliance with cardholder data security and storage requirements.

(b) Maintain fraud and chargebacks below Association thresholds.

(c) Review and understand the terms of the Merchant Agreement.

(d) Comply with Association rules.

**Print Client's Business Legal Name:** _____

By its signature below, Client acknowledges that it has received (either in person, by facsimile, or by electronic transmission) the complete Merchant Services' Program Guide (version PPS1107) consisting of 26 pages (including this confirmation). Client further acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agreement. Upon receipt of a signed facsimile or original of this Confirmation Page by us, Client's Application will be processed. Client understands that a copy of the Program Guide is also available for downloading from the internet at:

www.prioritypaymentsystems.com/manuals/PPS1107programguide.pdf

**Client's Business Principal:**
**Signature** (Please sign below)

X _____

David Feinell
Please Print Name of Signer

Title: _owner_

Date: 4/15/09

PPS1107

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE

CASE NO. 09-82322-CIV

FEDERAL TRADE COMMISSION,

           Plaintiff,

vs.                                    FORT LAUDERDALE, FLORIDA
                                       DECEMBER 9, 2009
FIRST UNIVERSAL LENDING, LLC,
SEAN ZAUSNER, DAVID ZAUSNER,           CORRECTED TRANSCRIPT
AND DAVID J. FEINGOLD,

           Defendants.
_____/

        TRANSCRIPT OF HEARING
        BEFORE THE HONORABLE WILLIAM J. ZLOCH
        UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

             FEDERAL TRADE COMMISSION
             BY:  GIDEON E. SINASOHN, ESQ.
                  HAROLD E. KIRTZ, ESQ.
             225 Peachtree Street, Northeast
             Atlanta, Georgia  30303

FOR THE DEFENDANTS, AND PRO SE:

             FEINGOLD & KAM
             BY:  DAVID FEINGOLD, ESQ.
             5100 PGA Boulevard, 2nd Floor
             Palm Beach Gardens, Florida  33418

**FOR THE RECEIVER:**

             TAMA BETH KUDMAN, ESQ.
             4440 PGA Boulevard, Suite 600
             Palm Beach Gardens, Florida  33410

REPORTED BY:  NANCY SIEGEL, RMR
              Official Reporting Services, LLC
              524 South Andrews Avenue, Suite 302N

Page 58

1  computer, if it could be utilized by Gail in accounting, that

2  her machine was slow and would I mind swapping it out, which,

3  quite frankly, these computers in this day and age, the value of

4  them pretty well decreases dramatically, I didn't care, I

5  indicated to him that my concern was there is law files on

6  there, at which point I learned that he erased everything, but

7  that someone like Gail just going on a computer you would never

8  see the files, but that if someone was technologically savvy

9  they might be able to pull off information, because you truly

10  never erase anything off a hard disk.

11       Well, when you all showed up at the office I went and

12  specifically pointed out that computer and said that computer,

13  Gail's computer I have concerns, because previously it had been

14  a computer used in a law office, I would like you all to prepare

15  a privilege log, at which point you stood in my office and

16  Jeffrey stood in my office and we got Tama on the phone at one

17  point and then we got your office on the phone at one point and

18  it was agreed that you all would give me a privilege log with

19  regards to that computer and what you would do is you would

20  print out a listing of all the directories, you would give that

21  to me and I would go down the directories and look and see if

22  any of those directories sounded like law directories, I know

23  the names of my clients, I know the names of the kinds of files

24  that we use, so I would be able to look and say, hey, this looks

25  like a law firm file, stay out of it, that was absolutely

Page 59

1   positively agreed, that was the computer we were talking about,

2   one stand-alone computer, and now it has enveloped itself into

3   an excuse for you all to not look at anything, it is just

4   completely and utterly false, it was one computer.

5          The other issue with privilege was that Ms. Moskowitz

6   went into the file room of the law firm because she wanted First

7   Universal files, which I agreed with her, she steps into the

8   shoes of First Universal, she should be entitled to First

9   Universal files, we stood there and went through the cabinets

10   and each file that said First Universal on it, we pulled it out,

11   we put it into banker's boxes, I remember Ms. Moskowitz walking

12   around with like I think a green magic marker, she told me, hey,

13   I am going to mark these so we know.

14          In fact, one of the boxes was the lawsuit with the

15   branch, which I pointed out to her, and then, lo and behold, to

16   my utter shock and disgust, after Ms. Moskowitz left and put

17   everything in another room, there I see you walking around in

18   the file room, and my statement to you is what are you doing,

19   and you are like, well, I am back here, these are our offices

20   now, we can do what we want, and it was just extraordinarily

21   uncomfortable the attitude you took towards it.

22          Now, I will be honest to the extreme and let you know

23   that I did not see you specifically take a file out, but the

24   attitude that I received from you gave me complete discomfort as

25   to your intentions and the fact that you then closed the back

Page 60

1    area in my file room, denied me access to it, and then you had

2    my associate Nick move out of his office, leave all of his law

3    documents on his desk, and he was not permitted back in his

4    office, that made me extraordinarily uncomfortable with you and

5    the process.

6         Q.   So, Mr. Feingold, just for clarity --

7         A.   Yes.

8         Q.   -- you are saying now that there is only one computer

9    upon which you have asserted a privilege, is that correct?

10        A.   I have always said that, not now, but always, and if

11   you look on my desk you will see why, there is just one Apple

12   there and that Dell that I used to use went over to Gail Finch's

13   area.

14        Q.   Is that two computers, then?

15        A.   Sir, I have an Apple now, my old Dell went over to Ms.

16   Finch, that is one computer.  The computer that I went and took

17   Jeffrey to, I took him to that computer to point out to him this

18   is the computer I have an issue with, and I saw him fill out an

19   evidence tag, a white evidence sheet with black writing on it,

20   and then you, myself and Jeffrey stood in my office having

21   multiple teleconferences about how to deal with this.

22            Jeffrey got his boss on the phone because he advised

23   me he was an independent contractor hired by you all, I don't

24   remember where he flew in from, but he was from out of town, you

25   were -- you were dealing with it and got your boss on, and I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,       )
                                )           CASE NUMBER
            PLAINTIFF,          )    09-82322-CIV-ZLOCH
                                )
      VS.                       )
                                )
FIRST UNIVERSAL LENDING, LLC,   )
SEAN ZAUSNER, DAVID ZAUSNER,    )           VOLUME 3
AND DAVID J. FEINGOLD,          )
                                )
            DEFENDANTS.         )
_____ )     MORNING SESSION


          TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING HAD
BEFORE THE HONORABLE WILLIAM J. ZLOCH, IN FORT LAUDERDALE,
BROWARD COUNTY, FLORIDA, ON WEDNESDAY, DECEMBER 9, 2009, IN
THE ABOVE-STYLED MATTER.


APPEARANCES:

FOR THE GOVERNMENT:    GIDEON E. SINASOHN, AND
                       HAROLD E. KIRTZ, ESQS.
FOR THE DEFENDANTS:    DAVID J. FEINGOLD, ESQ.

FOR THE RECEIVER:      TAMA B. KUDMAN, AND
                       MICHELLE R. BERG, ESQS.



CARL SCHANZLEH

OFFICIAL COURT REPORTER

U. S. COURTHOUSE

299 E. BROWARD BLVD., 202B

FORT LAUDERDALE, FLORIDA 33301

954 769-5488

1    TITLE.

2         THE ONLY OTHER DOCUMENT REFERENCING MY NAME,

3    WHICH MR. SINASOHN WENT THROUGH WAS IN MR. LIGGINS'

4    SUPPLEMENT.  AND IN THAT SUPPLEMENT, WHICH I UNFORTUNATELY

5    JUST MIXED WITH THE OTHER STACK, IN THAT SUPPLEMENT YOU

6    WILL SEE THERE IS A PAYCHECKS PAYROLL DOCUMENT.  AND ON

7    THAT PAYCHECKS PAYROLL DOCUMENT IT SAYS, "FIRST UNIVERSAL

8    LENDING," AND BELOW IT, IT HAS THE ADDRESS AND IT SAYS,

9    "DAVID FEINGOLD, GEN.MAN."  AND IF YOU LOOK AT THAT ADDRESS

10   IT SAYS 3300 PGA BOULEVARD.

11        WHAT YOU WILL FIND OUT IS THAT THE LAW FIRM OF

12   FEINGOLD & KAM HAD BEEN IN BUSINESS AT LEAST 10 YEARS PRIOR

13   TO FIRST UNIVERSAL.  THAT FIRST UNIVERSAL USED THE SAME

14   MAILING ADDRESS BECAUSE, AS I EXPLAINED, IT STARTED IN MY

15   CONFERENCE ROOM.  AS THE WALLS EXPANDED AND THEY MOVED, ON

16   THE MAIN DOOR HAPPENED TO BE THERE AND THERE WAS ONE

17   MAILING ADDRESS.

18        WHEN YOU REGISTER WITH PAYCHECKS THEY HAVE A

19   SECURITY PROVISION.  THEY DO NOT WANT MULTIPLE NAMES

20   RECEIVING PAYROLL.  IT KIND OF MAKES SENCE.  THEY DON'T

21   WANT MULTIPLE PEOPLE CALLING UP AND SAYING, "HEY, DELIVER

22   THESE LIVE CHECKS TO SOMEBODY ELSE."  I LEARNED THAT

23   BECAUSE THAT ADDRESS FOR THE LAST PRIOR 10 YEARS I HAD BEEN

24   RECEIVING THE PAYROLL UNDER FEINGOLD & KAM, DAVID FEINGOLD,

25   GEN.MEN. 3300 PGA, WHEN THEY TYPED IN FIRST UNIVERSAL'S

1  INDICATING --

2  A.   YES.  ABSOLUTELY.

3  Q.   AND WHERE IS THAT?

4  A.   YOU WANT TO COME TO MY OFFICE.  YES, ABSOLUTELY A

5  HUNDRED PERCENT.  YOU CAN SPEAK TO THE STAFF LAWYER.  SHE IS

6  A LOVELY LADY.

7  Q.   MARYLAND ISSUED A CEASE AND DESIST ORDER ACTUALLY AGAIN

8  YOU PERSONALLY TOGETHER WITH FIRST UNIVERSAL LENDING,

9  FEINGOLD & KAM, LENDING PARTNERS, ET CETERA, CORRECT?

10  A.   THEY FILED AN ACTION, YES.

11  Q.   AND THAT IS STILL -- THAT IS STILL EFFECTIVE, RIGHT?

12  A.   NO, THAT ACTION IS PENDING.  IF YOU READ THE LAST PAGE

13  OF THE ACTION IT SAYS THAT, "THE CEASE AND DESIST WILL BE

14  EFFECTIVE UNLESS WITHIN 30 DAYS YOU FILE A NOTICE LIKE AN

15  ANSWER THAT YOU ARE CHALLENGING IT."

16       WE FILED OUR CHALLENGE TO IT AND WE -- WHEN WE GET

17  OUR HEARING TIME WE WILL PRESENT OUR CASE ABOUT IT.

18  Q.   SO THEY HAVEN'T DROPPED THEIR CEASE AND DESIST ORDER,

19  RIGHT?

20  A.   IT'S LITIGATION.  BUT, NO, THEY HAVEN'T DROPPED THE

21  LITIGATION.

22  Q.   SO THE FTC IS NOT THE ONLY AGENCY THAT IS LOOKING INTO

23  THE ACTIVITIES OF THE DEFENDANTS IN THIS CASE, CORRECT?

24  A.   YOU ARE THE ONLY AGENCY WHO NEVER CONTACTED THE FIRM,

25  NEVER DID DILIGENCE AND FILED AN EMERGENCY ACTION.  THE

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,          )
                                   )          CASE NUMBER
                PLAINTIFF,         )      09-82322-CIV-ZLOCH
                                   )
        VS.                        )
                                   )
FIRST UNIVERSAL LENDING, LLC,      )
SEAN ZAUSNER, DAVID ZAUSNER,       )          VOLUME 5
AND DAVID J. FEINGOLD,             )
                                   )
                DEFENDANTS.        )
_____ )

        TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING HAD
BEFORE THE HONORABLE WILLIAM J. ZLOCH, IN FORT LAUDERDALE,
BROWARD COUNTY, FLORIDA, ON FRIDAY, DECEMBER 11, 2009, IN
THE ABOVE-STYLED MATTER.

APPEARANCES:

FOR THE PLAINTIFF:   GIDEON E. SINASOHN, AND
                     HAROLD E. KIRTZ, ESQS.
FOR THE DEFENDANTS:  DAVID J. FEINGOLD, ESQ.

FOR THE RECEIVER:    TAMA B. KUDMAN, AND

                     MICHELLE R. BERG, ESQS.


CARL SCHANZLEH

OFFICIAL COURT REPORTER

U. S. COURTHOUSE

299 E. BROWARD BLVD., 202B

FORT LAUDERDALE, FLORIDA 33301

954 769-5488

1      THE COURT:  THE PARTIES ARE TO HOLD ON TO THEIR

2   OWN EXHIBITS.

3      ANYTHING ELSE FROM THE FTC OR FROM THE DEFENSE?

4      MR. FEINGOLD:  YES, YOUR HONOR.

5      WE HAVE ASSETS OF CLIENTS IN OUR ESCROW ACCOUNTS.

6   I ASSUME THEN THE LAW FIRM OF FEINGOLD & KAM JUST CEASE.  I

7   ASSUME THIS IS EXTENDING TO THE LAW FIRM, EVEN THOUGH THE

8   ORDER IN THEIR INJUNCTION NEVER ISSUED TO THE LAW FIRM,

9   ONLY ME INDIVIDUALLY.  I AM THE SIGNATOR ON ALL OF THAT.

10      THE COURT:  WHAT IS THE FTC'S POSITION ON THAT?

11      MR. SINASOHN:  YOUR HONOR, WE WOULD ASK

12   MR. FEINGOLD TO PROVIDE FOR US INFORMATION THAT HELPS US TO

13   UNDERSTAND WHAT PART OF THAT ACCOUNT IS DERIVED FROM MONIES

14   -- FROM FIRST UNIVERSAL MONIES --

15      THE COURT:  VERSUS REGULAR CLIENTS.

16      MR. SINASOHN:  -- VERSUS REGULAR CLIENTS.  AND

17   THEN THE PARTS THAT ARE NOT FROM FIRST UNIVERSAL WE WOULD

18   NOT OBJECT TO LIFTING THE ASSET FREEZE.

19      THE COURT:  THAT IS PART OF THE COURT'S RULING.

20      MR. FEINGOLD:  WELL, JUDGE --

21      THE COURT:  I AM NOT GOING TO HEAR ANY MORE ON

22   THIS.  THIS CAN BE WORKED OUT WITH THE RECEIVER.

23      MR. FEINGOLD:  OKAY.

24      THE COURT:  ALL RIGHT.  THIS CAN BE WORKED OUT

25   WITH THE RECEIVER.  IF NOT YOU CAN FILE THE APPROPRIATE