**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 09-82322-CIV-ZLOCH/ROSENBAUM**

FEDERAL TRADE COMMISSION,

Plaintiff,

vs.

FIRST UNIVERSAL LENDING, LLC,
a limited liability company;
SEAN ZAUSNER, individually and
as owner, officer, or manager of
First Universal Lending, LLC;
DAVID ZAUSNER, individually and
as owner, officer, or manager of
First Universal Lending, LLC; and
DAVID J. FEINGOLD, individually and
as officer or manager of First Universal
Lending, LLC,

Defendants.
_____________________________________/

# REPORT AND RECOMMENDATION

This matter is before the Court upon Defendants' Motion for Leave to Amend to Add Supplemental Counterclaim, Cross-Claim, and/or Third Party Complaint ("Motion for Leave to Amend") [D.E. 151] pursuant to an Order of Referral from the Honorable William J. Zloch. [D.E. 172]. After reviewing the Motion, Plaintiff's Response in Opposition [D.E. 160], Defendants' Reply [D.E. 164], and the case file, I recommend that the Court deny the Motion for Leave to Amend.

## *BACKGROUND*

This case began as a civil enforcement action brought by Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") against Defendants First Universal Lending, LLC ("FUL"), Sean Zausner, David Zausner, and David Feingold ("Feingold") (collectively referred to as "Defendants"). More

specifically, on November 18, 2009, the FTC brought an action against Defendants pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, in relation to Defendants' allegedly deceptive practices, misrepresentations, and abusive telemarketing in connection with their offerings of mortgage loan modification and foreclosure rescue services. *See* D.E. 1, 160. The Complaint seeks injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts "in connection with the marketing and sale of mortgage loan modification and foreclosure relief services." *See* D.E. 1 at 2.

Contemporaneously with the filing of the Complaint, the FTC filed its *Ex Parte* Motion to File Papers Under Seal as well as its *Ex Parte* Emergency Motion for Temporary Restraining Order, Other Equitable Relief and an Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Emergency Motion"). D.E. 1, 5. On November 19, 2009, the Court issued an Order granting the Emergency Motion and issued a Temporary Restraining Order With Asset Freeze and Other Equitable Relief. D.E. 14. The November 19, 2009, Order, among other things, appointed a Receiver and directed Defendants to appear and show cause why the Court should not enter a preliminary injunction, pending a final ruling on the Complaint, enjoining Defendants from violating the FTC Act and the Telemarketing Sale Rule, and imposing additional relief. Pursuant to the Temporary Restraining Order, the FTC froze Defendants' assets and, through the Receiver, took custody of computers and other evidence in support of the FTC's claims.

The FTC later filed a Motion for Preliminary Injunction [D.E. 34, 35] in response to which the Court held a five-day hearing beginning on December 7, 2009. [D.E. 42, 44, 47-49]. After

hearing testimony presented by all of the parties, the Court entered a Preliminary Injunction [D.E. 53], based in part on its conclusion that good cause existed to believe that Defendants had engaged, and were likely to continue to engage, in acts or practices that violate the FTC Act and the Telemarketing Sales Rule. The Court also found good cause to believe that "immediate and irreparable damage to the Court's ability to grant effective final relief for consumers will occur from the sale, transfer, or other disposition or concealment by Defendants of their assets or corporate records unless Defendants are immediately restrained and enjoined by order of this Court." *Id.* at 2.

On July 15, 2010, Defendants filed their Answer and Affirmative Defenses to the Complaint. [D.E. 138]. Approximately three months later, on October 5, 2010, Defendants filed their Motion for Leave to Amend to Add Supplemental Counterclaim, Cross-Complaint, and/or Third-Party Complaint ("Motion for Leave to Amend") [D.E. 151], which is pending before the Court for consideration. As noted above, the FTC filed its Response in Opposition to the Motion for Leave to Amend [D.E. 160], and Defendants filed their Reply. [D.E. 164]. The Honorable William J. Zloch then referred the matter to me for report and recommendation. Accordingly, this matter is now ripe for disposition.

## *ANALYSIS*

### A. Standard Governing Motion for Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure governs the Court's determination of whether to grant Defendants leave of court to assert their proposed counterclaims and provides as follows:

> (1) **Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:

> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(B), (e), or (f), whichever is earlier.
>
> (2) **Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Rule 15(a), Fed. R. Civ. P. Under Rule 15(a), because Defendants filed the Motion to Amend more than twenty-one days after they filed their Answer and Affirmative Defenses, they may not assert their counterclaims as a matter of course. And because the FTC did not consent to the filing, Defendants must seek leave of court to assert their counterclaims. The Court may grant the Motion for Leave if "justice so requires." Both parties appear to agree that this is the applicable standard.

The decision whether to grant the Motion for Leave to Amend falls within the discretion of the district court. *Laurie v. Ala. Court of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001). Rule 15(a), however, limits the Court's discretion by requiring courts to give leave to amend freely when justice so requires. Consequently, the Court must provide a justification if it denies a timely filed motion for leave to amend. *Id.*

On the other hand, leave to amend is not automatic. *Faser v. Sears, Roebuck & Co.,* 674 F.2d 856, 860 (11th Cir. 1982) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir.), *cert. denied*, 454 U.S. 1098 (1981)); *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097, 1099 (5th Cir. 1979). As the Eleventh Circuit has noted, the Supreme Court has set forth the following standard to guide district courts when considering a motion for leave to amend:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

> amendment, futility of amendment, etc.– the leave sought should, as the rules require, be "freely given."

*Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Laurie*, 256 F.3d at 1274.

Put simply, if the underlying facts or circumstances relied upon may constitute a proper subject of relief, the court should grant leave to amend. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (citing *Forman*, 371 U.S. at 182). A district court, however, can deny leave to amend when a proposed amendment would be futile. *Id.; Abner v. Mobile Infirmary Hosp.*, 149 F. App'x 857, *1 (11th Cir. 2005). Indeed, the Eleventh Circuit has held that "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Hall*, 367 F.3d at 1263 (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).[1] Futility equates with "inadequacy as a matter of law." *Burger King Corp.*, 169 F.3d at 1315. A complaint is inadequate as a matter of law where it cannot withstand a motion to dismiss. *See Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996); *Hall*, 367 F.3d at 1263. Consequently, in evaluating whether to grant Defendants' Motion for Leave to Amend, the Court reviews Defendants' proposed Counterclaim, Cross-Complaint, and Third-Party Complaint

[1] Relying on *Principal Life Insurance Co. v. Cutler*, 2010 WL 1999032 (M.D. Fla. May 18, 2010), Defendants suggest in their Reply that the Court may deny a motion for leave to amend only when the party opposing the motion "unmistakably demonstrate[s] that leave to amend is being sought to unduly delay the litigation, in bad faith, or for another dilatory motive on the part of the movant." D.E. 164 at 4. In fact, *Cutler* states, "Substantial reasons justifying a denial include 'undue delay, bad faith, dilatory motive on the part of the movant, . . . *undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of allowance of the amendment*." *Id.* at *1 (quoting *Laurie v. Ala. Ct. of Crim. App.*, 256 F.3d 1266, 1274 (11th Cir. 2001) (quotation marks omitted) (emphasis added). Moreover, as discussed above, Eleventh Circuit precedent clearly renders futility of a proposed amendment a basis for denying a motion to amend pleadings.

(the "Counterclaim"), to determine whether the Counterclaim appears able to survive a motion to dismiss.

**B. Standard Governing A Motion to Dismiss**

Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss. That rule provides, in relevant part,

> **(b)** **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> **(6)** failure to state a claim upon which relief can be granted; . . . .

*Id.* The Court, therefore, considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1256 (11th Cir. 2009); *Cobb v. State of Florida*, 293 F. App'x 708, 709, *1 (11th Cir. 2008)*; Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Similarly, "naked assertion[s]" bereft of "further factual enhancement" do not suffice, either. *Twombly*, 550 U.S. at 555, 557. As the Supreme Court has explained, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Moreover, the facts supporting the claim must be 'consistent with

the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562). On a motion to dismiss, the Court should accept the non-conclusory allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709; *Brown v. Budget Rent-A-Car Syst., Inc.*, 119 F.3d 922, 923 (11th Cir. 1997). Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950-51 (2009) (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted).

Despite the general rule limiting the court to the four corners of the complaint in evaluating the sufficiency of a complaint at the motion-to-dismiss stage, a court may look beyond the complaint to facts in the record that are not subject to reasonable dispute where the court's jurisdiction is in question. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 20, 1981).[2] This is because "at issue . . . is the trial court's jurisdiction – its very power to hear the case . . . ." *Id.*; *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Scarfo v. Ginsberg*, 175 F.3d 957, 960-61 (11th Cir. 1999). Thus, a court may satisfy itself that it, in fact, enjoys jurisdiction. With these standards in mind, the Court considers the adequacy of Defendants' proposed Counterclaim.

**B. "Shotgun" Pleading**

The Court begins by addressing the form of the proposed Counterclaim. The Eleventh Circuit defines a "shotgun" pleading as one where each count incorporates by reference all preceding

---

[2] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

paragraphs and counts of the complaint, even though many of the facts alleged bear no relevance to the cause of action captioned in the count's heading. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)). Shotgun pleadings "water[] down the rights of the parties to have valid claims litigated efficiently" and "wreak havoc on the judicial system." *Byrne v. Nezhat*, 261 F.2d 1075, 1130 (11th Cir. 2001). Because cases framed by shotgun pleadings exhaust a disproportionate amount of time for courts to resolve, they cause delayed justice and risk the public's confidence in the system. *Id.* For these reasons, the Eleventh Circuit "frown[s]" upon – indeed, "condemn[s]" – shotgun pleadings. *M.T.V. v. DeKalb Cty. School Dist.*, 446 F.3d 1153, 1156 n.1 (11th Cir. 2006); *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008). Where a complaint constitutes a shotgun pleading, a court should strike it. *Davis*, 516 F.3d at 984.

Against this framework, the Court considers whether the Counterclaim sought to be filed in this case violates the shotgun pleading rule and finds that it does. Every count in the proposed Counterclaim incorporates by reference every paragraph in the count preceding it. As a result, Count I is realleged in Count II, Counts I and II are realleged in Count III, and so forth, and all of the counts likewise incorporate all of the averments preceding each of the counts. Indeed, each count of the Counterclaim states as follows: "Defendants/Counter-Plaintiffs/Cross-Complainants[/Third-Party Plaintiffs] repeat and re-allege each of the foregoing allegations contained in the foregoing paragraphs of this Counterclaim/Cross-Complaint/Third-Party Complaint as though fully set forth herein." *See* D.E. 151-1 at ¶¶ 210, 230, 255, 280, 304, 330, 355, 365, 389, 418, 426, 433, 445, 450, 457, 463, 469, 473. For this reason alone, the Counterclaim embodies the very definition of a shotgun pleading.

Moreover, the Counterclaim purports to make claims against the FTC and third parties. By incorporating all of the allegations set forth in the allegations of the Counterclaim preceding the counts, as well as in each preceding count, the Counterclaim incorporates claims seemingly meant to be asserted against Plaintiff, against third parties. Consequently, as currently drafted, third parties sought to be brought in to the action would be required to respond to an additional sixteen counts apparently not meant to apply to them. For example, paragraph 473, set forth within the count against a third-party defendant entitled "Indemnity" (Count XVIII), also incorporates the prior allegations "as though fully set forth herein." *Id.* at 132. Accordingly, claims that Defendants seek to assert against the FTC (*i.e.*, invasion of privacy) are also encompassed and incorporated in claims sought to be asserted against a third-party indemnitor. Likewise, Defendants' third-party claim for contribution (Count XVII) incorporates all prior allegations and counts and, thus, would require the third party to respond to these claims.

These circumstances cause confusion and violate the one-claim-per-count rule. *See Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996). For these reasons, the proposed Counterclaim is unclear, confusing, and subject to dismissal if filed. Thus, authorizing its filing would be futile. Thus, I respectfully recommend that the Court deny leave to file the proposed Amended Complaint.

**C. Other Deficiencies**

Although I recommend denying Defendants' Motion for Leave to Amend because the Counterclaim violates the "shotgun pleading" rule, this Report and Recommendation points out some of the more egregious other deficiencies in the Counterclaim in this matter so that Defendants may attempt to correct them should they seek leave to file another version of the Counterclaim.

While the Counterclaim appears to contain a number of fatal deficiencies, this Report and Recommendation does not attempt to catalogue all of them, but rather focuses on some of the most significant.[3]

**1. Claims Brought Pursuant to the Federal Tort Claims Act**

In Counts I-VII , Defendants seek to bring various claims against the FTC and its employees Gideon Sinasohn ("Sinasohn")[4] and Michael Liggins ("Liggins").[5] Specifically, Counts I-VII set forth claims for abuse of process, negligent misrepresentation, invasion of privacy, slander of title, negligent retention, negligent supervision, and tortious interference. *See* D.E. 151-1 at ¶¶ 210-364. These proposed claims under the Federal Tort Claims Act, 28 U.S.C. § 2675 ("FTCA"), could not withstand a motion to dismiss for a variety of reasons.

Absent a waiver of immunity, the United States is immune from suit. "The FTCA is a specific, congressional exception to the general rule of sovereign immunity. It allows the government to be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government." *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994). The bounds of the FTCA's waiver of sovereign immunity must be "scrupulously observed, and not expanded, by the courts." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 157-59 (1970)).

The controlling provision of the FTCA is 28 U.S.C. § 2675, which provides,

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable

[3] The fact that this Report and Recommendation does not specifically discuss other shortcomings in the proposed Counterclaim does not suggest that such problems do not exist.

[4] Sinasohn is an attorney and serves as lead counsel for the FTC in this case.

[5] Liggins is employed by the FTC and is the lead investigator in the underlying matter.

> for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.

Courts reviewing FTCA claims look to the law of the state in which the alleged tortious act occurred to resolve questions of liability. *See Couzado v. United States*, 105 F.3d 1389 (11th Cir. 1997), *abrogated on other grounds by Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). Subject to certain limited exceptions, the FTCA allows a person injured by a Government employee acting within the scope of employment to seek tort damages against the Government. *United States v. Smith*, 499 U.S. 160, 162 (1991). Several problems exist with respect to Defendants' proposed FTCA claims, the most obvious being that the FTCA does not authorize claims against a governmental *agency* such as the FTC.

**a. The FTCA Does Not Authorize Claims Against Federal Agencies or Their Employees**

Federal agencies, such as the FTC, and their employees may not be sued under the FTCA. *Albajon v. Gugliotta*, 72 F. Supp. 2d 1362, 1366, n. 7 (S.D. Fla. 1999) (citing *Allen v. City of Kansas City*, 660 F. Supp. 489, 491 (D. Kan. 1987) (federal agency is not a proper defendant under the FTCA because under the Act, "the only proper defendant is the United States."). Rather, only the United States is a proper defendant in such an action. Because naming the proper defendant is a jurisdictional prerequisite to asserting a claim under the FTCA and the proposed Counterclaim fails to do that, the Court lacks subject matter jurisdiction over the FTCA claims as pled. *See Anderson v. Bailer,* 459 F. Supp. 792, 793 (M.D. Fla. 1978), *aff'd*, 619 F.2d 81 (5th Cir.), *cert. denied*, 449 U.S. 956 (1980). *Denney v. United States Postal Service*, 916 F. Supp. 1081, 1083 (D. Kan. 1996); *See also*, *FTC v. Commonwealth Marketing Group, Inc.*, 72 F. Supp. 2d 530, 540 (W.D. Penn. 1999) (concluding that the FTC is not amenable to suit under the FTCA). As a result, if the Court were to

grant the Motion for Leave to Amend to allow Defendants to assert claims pursuant to the FTCA, those claims would not survive a motion to dismiss. For this reason, the Motion for Leave to Amend should be denied since the claims would be futile.[6]

Additionally, pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the "Westfall Act"*)*, a party may not bring a claim against an individual federal employee if the employee is certified as having acted within the scope of employment at the time of the incident out of which the claim arose. 28 U.S.C. § 2679(d)(1). The Westfall Act empowers the Attorney General to certify that the employee was acting within the scope of employment. Once a federal employee is certified as having acted within the scope of employment, that employee is not subject to suit. Instead, the action is deemed to be one against the United States under the provisions of the FTCA, and the United States is then substituted as a party. *Id. Gutierrez de Martinez v. Lamango*, 515 U.S. 417, 420 (1995) (certification shields employee even when an exception to the FTCA applies – which then precludes the United States from suit). Accordingly, the Westfall Act confers immunity "by making an FTCA action against the Government the exclusive remedy for torts committed by the Government employee in the scope of their employment." *Smith*, 499 U.S. at 163.

Here, although Sinasohn and Liggins have not yet been certified as having acted within the scope of their employment at the time that they allegedly committed the acts set forth by Defendants in their Counterclaim, Defendants have conceded this fact in their Counterclaim allegations. Indeed, throughout the Counterclaim, Defendants allege that Sinasohn and Liggins were "acting within the

[6] The Court notes, however, that United States could be added to or substituted in the proceedings as a defendant.

scope of their employment" as federal employees. *See e.g.*, D.E. 151-1 at ¶¶ 4, 6, 30, 31, 220, 243, 267, 291, 317, 342, and 356. Accordingly, even in the light most favorable to Defendants, the Counterclaim's allegations that Sinasohn and Liggins were acting within the scope of their employment as employees of the FTC defeat any FTCA claims against Sinasohn and Liggins individually.

Additionally, the FTC asserts that the Department of Justice ("DOJ") will "undoubtedly" issue a certification that the individuals were acting within the scope of their employment with the FTC. D.E. 160 at 2. The Court recognizes that Defendants would ordinarily have the opportunity to challenge any such certification and, if such challenge were made, the Court would review the certification to determine whether the employee was actually acting in the scope of employment. *Lamango*, 515 U.S. at 434-47. *See FTC v. Commonwealth Marketing Group, Inc.*, 72 F. Supp. 2d at 540 (finding that consideration of effect of certification was premature because no certification had been filed). Defendants, however, would be hard-pressed to challenge any certification in this area, in view of their numerous allegations asserting that Sinasohn and Liggins were acting within the scope of employment.

In short, because the Counterclaim affirmatively avers that Sinasohn and Liggins were acting within the scope of their employment when they committed the alleged torts, the FTCA claims that Defendants seek to pursue against them individually must necessarily fail. Consequently, the Motion for Leave to Amend as it relates to the FTCA claims against Sinasohn and Liggins should be denied since these claims would be futile.

**b. Exhaustion of Administrative Remedies Under the FTCA**

Even if Defendants were otherwise able to pursue their FTCA claims against the FTC and

its individual employees, Defendants have failed to allege facts showing that they exhausted their administrative remedies and, hence, their proposed FTCA claims are not viable.

28 U.S.C. § 2675(a) requires parties seeking to bring a claim against the United States under the FTCA to exhaust their administrative remedies with the appropriate federal agency prior to bringing suit. More specifically, Section 2675(a) provides that a party may not institute a claim under the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." In fact, a court may not exercise jurisdiction over a suit brought pursuant to the FTCA in the absence of the party's exhaustion of available administrative remedies. *Suarez*, 22 F.3d at 1065; *Gregory*, 634 F.2d at 203-04. In this respect, the "filing of an administrative claim . . . is jurisdictional and cannot be waived." *Albajon*, 72 F. Supp. 2d at 1368 (citation omitted); *Gregory*, 634 F.2d at 204. Accordingly, if a party fails to comply with the administrative prerequisite, that party can not maintain an action pursuant to the FTCA. *Id.*

The FTCA, however, provides an exception to the administrative exhaustion requirement for claims "asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim." 28 U.S.C. § 2675(a). This exception applies to "counterclaims that assert a claim arising out of the same transaction or occurrence which is the subject matter of the government's suit and seek relief only to the extent of diminishing or defeating the government's recovery." *Cox v. Kurt's Marine Diesel of Tampa, Inc.*, 785 F.2d 935, 936 (11th Cir. 1986). Consequently, a party seeking to assert a compulsory counterclaim need not first exhaust administrative remedies to pursue a claim under the FTCA.

Rule 13(a), Fed. R. Civ. P., defines a compulsory counterclaim as any claim that "arises out

of the transaction or occurrence that is the subject matter of the opposing party's claim." Additionally, the Eleventh Circuit has adopted the "logical relationship" test for determining whether a counterclaim is compulsory. *Republic Health Corp. v. Lifemark Hosp.*, 755 F.2d 1453, 1455 (11th Cir. 1985); *Miami Herald Publ'g Co. v. Ferre*, 636 F. Supp. 970 (S.D. Fla. 1985); *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir. 1980). Under this test, a logical relationship exists when "the same operative facts serve as a basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (citing *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979) (internal quotations omitted)). In making this determination, however, the court should keep in mind that "the logical relationship test 'is a loose standard which permits a "broad realistic interpretation in the interest of avoiding a multiplicity of suits. The hallmark of this approach is its flexibility."'" *Miami Herald Publ'g. Co.*, 636 F. Supp. at 973 (quoting *Plant*, 598 F.2d at 1361 (citations omitted)). A counterclaim is deemed to be compulsory if the claims are essentially "offshoots of the same basic controversy between the parties . . . [such that] 'fairness and considerations of convenience and economy' dictate that ancillary jurisdiction should be exercised." *Id*. (quoting *Revere Copper & Brass Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 714 (5th Cir. 1970)).

Case law suggests that Defendants' FTCA counterclaims would not be considered compulsory and, thus, Defendants are not excused from exhausting their administrative remedies. In *FTC v. Commonwealth Marketing Group, Inc.*, 72 F. Supp. 2d 530 (W.D. Pa. 1999), for example, a case with facts similar to the instant one, the Western District of Pennsylvania found that purported counterclaims advanced by the defendants against the FTC were not compulsory because they did

not bear a logical relationship to the FTC's claims. *Id.* at 541. In that case, the FTC originally brought suit against a telemarketing firm, alleging violations of the FTC Act and the Telemarketing Sales Rule. *Id.* at 533. Defendants filed a counterclaim against the FTC, the United States, and individual FTC employees, asserting that they violated the defendants' Fourth and Fifth Amendment rights. *Id.* The defendants also sought to bring claims against the FTC and its employees for abuse of process, malicious prosecution, and conversion. *Id.*

In considering the counter-defendants' motion to dismiss, the court emphasized that the basis for the FTC's claims centered on the defendants' alleged violations of the FTC Act and Telemarketing Rule through their telemarketing practices. *Id.* at 540-41. On the other hand, the defendants' counterclaims were based upon "alleged improprieties" relating to an *ex parte* temporary restraining order obtained by the plaintiffs. *Id.* at 541. Finding that the "factual underpinnings of and the legal issues relevant to the parties' claims simply are not the same," the court concluded that the counterclaims were not compulsory since the plaintiff's claims were not "offshoots" of the same basic controversy. *Id.* Consequently, the court determined that the defendants' failure to comply with the FTCA's administrative claim requirement barred the court from exercising jurisdiction over the United States. *Id.* *See also United States v. Amtreco, Inc.*, 790 F. Supp. 1576, 1580 (M.D. Ga. 1992) (finding that defendants' proposed FTCA counterclaims in which they accused government agents of falsely swearing under oath and falsifying records were not compulsory because they were not logically related to the government's claim for recovery of environmental cleanup costs and dismissing proposed FTCA counterclaims).

Like the defendants in *Commonwealth Marketing Group*, Defendants here attempt to bring claims against the FTC and its employees in relation to the FTC's request for and obtaining of the

temporary restraining order. Accordingly, the court's holding in *Commonwealth Marketing Group* militates in favor of a finding that Defendants' FTCA counterclaims are not compulsory and, thus, Defendants are not excused from exhausting their administrative remedies. Because it appears that Defendants must exhaust their administrative remedies and they have failed to allege facts plausibly suggesting that they have done so, the Court lacks jurisdiction and this aspect of the Counterclaim could not survive a motion to dismiss as currently pled. *See Gregory*, 634 F.2d at 204.

**c. The FTCA Does Not Permit the Causes of Action Alleged by Defendants**

In addition to the foregoing reasons, exceptions listed in the FTCA that render inoperable the FTCA's waiver of sovereign immunity appear to apply to many of the claims sought to be brought by Defendants. Indeed, the discretionary function exception and other specific exceptions set forth in Section 2680(h) preclude jurisdiction with regard to some of Defendants' proposed claims.

Although the FTCA creates a limited waiver of the United States's sovereign immunity, this waiver is subject to various exceptions. *See* 28 U.S.C. § 2680. Section 2680(a) contains the "discretionary function" exception to the FTCA. Pursuant to Section 2680(a), the Government does not waive sovereign immunity over

> Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

This exemption precludes tort claims based on governmental actions that implicate the exercise of discretion in considerations of public policy. *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006); *United States v. Gaubert*, 499 U.S. 315 (1991). The Supreme Court in *Gaubert* developed a two-step test to determine whether the government's conduct meets the discretionary

function exception. *Miles v. Naval Aviation Museum Found., Inc.*, 289 F.3d 715, 720 (11th Cir. 2002) (citing *Gaubert*, 499 U.S. at 322-23). First, a court must consider whether the conduct alleged involves "an element of judgment or choice," which will be the case unless "a federal statute, regulation, or policy specifically prescribes a course of action embodying a *fixed* or *readily ascertainable* standard." *Cranford*, 466 F.3d at 958 (internal citations omitted). The conduct need not be "confined to the policy or planning level." *Id.* (quoting *Gaubert*, 499 U.S. at 325).

Second, the court must determine whether the judgment or choice is "grounded in considerations of public policy, because the 'purpose of the [discretionary function] exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social economic, and political policy through the medium of an action in tort.'" *Id.* (citations omitted). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a [g]overnment agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. The court's inquiry does not focus on the agent's subjective intent or on whether the agent actually weighed policy considerations, but instead "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325. Thus, to succeed, Defendants here must show "that the challenged actions are not the kind of [discretionary] conduct that can be said to be grounded in the policy of the regulatory regime." *Id.*

Notably, Congress, when drafting and considering the FTCA, explicitly indicated that the discretionary function exception was intended to apply to the FTC. *See Dalehite v. United States*, 346 U.S. 15, 29 & n. 21 (1953). In this regard, Congress noted that the discretionary function was

> designed to preclude application of the bill to a claim against a regulatory agency, *such as the Federal Trade Commission*, or the

> Securities and Exchange commission, based upon an alleged abuse of discretionary authority by an officer or employee, whether or not negligence is alleged to have been involved.

*Id.* (quoting H.R. Rep. No. 2245, 77th Cong., 2d Sess., p. 10; S. Rep. No. 1196, 77th Cong., 2d Sess., p. 7; H.R. Rep. No. 1287, 79th Cong., 1st Sess., pp. 5-6; Hearings before H. Com. on Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess., p. 33) (emphasis added) .

Courts have repeatedly held that the conduct of regulatory investigations is immune from FTCA liability unless mandatory directives exist that limit the investigators' discretion to determine both the scope and the manner of the investigation. *Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1039 (C.D. Cal. 2010) (gathering cases where courts have found regulatory investigations immune under the FTCA); *see, e.g.*, *Sloan v. U.S. Dept. of Housing and Urban Dev.*, 236 F.3d 756, 762 (D.C. Cir. 2001) ("[T]he sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice."). In the proposed Counterclaim, Defendants have not pointed to any mandatory directives that would have limited Sinasohn or Liggins's discretion in investigating the underlying matter. Additionally, these individuals' courses of action were "of the kind" that is susceptible to policy analysis. *Gaubert,* 499 U.S. at 323; *See Smith v. United States*, 375 F.2d 243, 248 (5th Cir. 1967); *Ochran v. United States*, 117 F.3d 495, 501 (11th Cir. 1997) (noting that decisions involving prosecutorial discretion constitute an important public policy consideration and that the "prosecutorial discretion has long been recognized as sacrosanct.").

Likewise, as the FTC points out in its Opposition, the discretionary function exception applies to claims based upon publication of information because decisions by the FTC to release information about law enforcement matters are highly discretionary and based on policy

considerations such as the need to warn the public about deceptive trade practices. *Kilpatrick v. United States*, 578 F. Supp. 2d 1339, 1351 (N.D. Fla. 2008) (plaintiff's claims of invasion of privacy, negligence, and intentional infliction of emotional distress found to be subject to the discretionary function exception). While the burden falls on the Government to show that the discretionary function exception applies, Defendants' failure to allege facts plausibly suggesting the exception's inapplicability in the face of facts asserted in the proposed Counterclaim supporting a finding the exception does apply dooms the Defendants' proposed FTCA claims subject to the discretionary exception. *Davis v. United States*, 918 F. Supp. 368 (N.D. Fla. 1996).

Similarly, other exceptions to the FTCA's waiver of sovereign immunity also appear to render non-viable several of Defendants' proposed claims. Although the Court will not now fully discuss the exceptions listed in 28 U.S.C. § 2860(h) or whether Sinasohn and Liggins constitute "investigative or law enforcement officers," it does note that many of the claims sought to be brought by Defendants are listed within Section 2860(h) as torts that can never be asserted under the FTCA. The list includes abuse of process (Count I of Counterclaim), negligent misrepresentation (Count 2 of Counterclaim), slander of title (Count 4 of Counterclaim) and interference with contract rights (Count VII of Counterclaim). Additionally, invasion of privacy for publication of an individual in a false light (Count III of Counterclaim) is not recognized under Florida's common law. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008) (Florida does not recognize a cause of action for false light invasion of privacy).

For all of these reasons, I respectfully recommend that the Court find that Defendants' FTCA claims as pled would be futile if they were allowed to proceed. Consequently, I recommend that the Court deny the Motion for Leave to Amend.

**2. Further Examples of Deficiencies Within the Proposed Counterclaim**

Defendants' pleading deficiencies continue through their purported constitutional claims, which appear in Counts VIII through XII, and in other counts. As with errors in the other parts of the proposed Counterclaim, this Report and Recommendation does not attempt to provide an exhaustive list of those deficiencies, but instead focuses on some of the more fundamental ones.

First, with respect to Defendants' proposed constitutional claims that seek damages against the United States, the Counterclaim does not clearly identify through which statute or other authority Defendants seek to advance their claims or demonstrate how the government has waived its sovereign immunity. As the FTC correctly notes in its opposition, a *Bivens* cause of action cannot be brought against a federal agency.[7] *See Albajon*, 72 F. Supp. 2d at 1368 (citing *FDIC v. Meyer*, 510 U.S. 471 (1994)). Likewise, the FTCA does not authorize claims against the government for allegations relating to the deprivation of a federal constitutional right. *Meyer*, 510 U.S. at 478. Nor may Defendants pursue their constitutional claims seeking monetary damages against the FTC under the Administrative Procedure Act ("APA"). The APA offers relief, *other than monetary damages*, from a legal wrong because of agency action. 5 U.S.C. § 702; *Commonwealth Marketing Group*, 72 F. Supp. 2d at 541. Furthermore, any allegation that the FTC is liable for the constitutional claims pursuant to 42 U.S.C. § 1983 must also fail because Defendants have alleged no action under color of state law.

Finally, to the extent that Defendants invoke the Tucker Act, 28 U.S.C. § 1491(a)(1), as a vehicle for seeking monetary damages for the alleged violations of their constitutional rights, the due

---

[7] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *Bivens* provides a mechanism through which a party may obtain a remedy for the deprivation of rights by a federal official. *Leonard v. FBI*, 2010 WL 5071835, *1 (11th Cir. Dec. 14, 2010).

process clause of the Fifth Amendment, standing alone, cannot be "interpreted to command the payment of money." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989) (citation and quotation marks omitted). Moreover, consideration of the "true nature" of Defendants' proposed Counterclaim suggests that the Court of Federal Claims may have exclusive jurisdiction over Defendants' proposed monetary constitutional claims. *Cf. Doe v. United States*, 372 F.3d 1308, 1315-16 (Fed. Cir. 2004).

Other pleading deficiencies are apparent with respect to Sinasohn and Liggins. Defendants contend in Counts VIII and IX that these individual federal employees are jointly and severally liable through the application of the Tucker Act to 42 U.S.C. § 1983. *See* D.E. 151-1 at ¶ 380. These claims must fail since Defendants may not maintain a claim under Section 1983 because 42 U.S.C. § 1983 applies only to a violation of a federal or constitutional right by an individual acting under color of *state* law. *Albajon*, 72 F. Supp. 2d at 1369 (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Gomez v. Toledo*, 446 U.S. 635 (1980)). In order to proceed on a claim under Section 1983, Defendants must establish that Sinasohn and Liggins deprived them of a right secured by the Constitution or laws of the United States and that they did so while acting under color of state law. *Id.* (citing *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); and *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995)). Sinasohn and Liggins's authority, however, stems from their status as federal employees of the FTC. As a result, any actions that they took arose under federal law, not state law. Because Section 1983 is not applicable to actions taken under color of federal law, these claims against the individual FTC employees must not be permitted as currently pled.

Another example of the deficiencies contained in the proposed Counterclaim is reflected in certain counts asserted against Sinasohn. These constitutional counts must not be added as pled

because, as a government attorney, Sinasohn is entitled to absolute immunity with respect to his role in seeking an order for injunctive relief against Defendants and freezing their assets. *FTC v. Commonwealth Marketing Group, Inc.*, 72 F. Supp. 2d 530, (W.D. Pa. 1999) (citing *Schrob v. Catterson*, 948 F.2d 1402, 1408-09 (3d Cir. 1991) (absolute immunity insulated prosecutor from liability because the act of appearing before and presenting evidence to a judge was clearly performed by the prosecutor as an advocate and not as an administrator or investigator).

Furthermore, in their proposed Count X for alleged Fourteenth Amendment violations, Defendants claim that the FTC, by seeking disgorgement of ill-gotten gains primarily from "successful businesses," has "discriminat[d] on the basis of wealth" and violated Defendants' equal protection rights. *See* D.E. 151-1 at ¶¶ 418-25. More specifically, Defendants assert that application of the damages provision found in the Telemarketing Sales Rule and Section 5 of the FTC Act bears more heavily on one group than another, and the FTC provides "no explanation or rational relation to a legitimate government purpose and thus, the unequal application is patently arbitrary." *Id.* at ¶ 424. Because "wealth" does not qualify as a suspect class, however, Defendants' claim must necessarily fail. *See Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 24 (1973) ("where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages.").

Other examples of deficiencies in the proposed Counterclaim exist, but the Court does not itemize each of them in light of the abundant reasons set forth above to deny the Motion for Leave to Amend. The Court does note, however, that the proposed Counterclaim contains various inflammatory allegations with respect to Sinasohn and Liggins which appear to have no legitimate place in the Counterclaim. For example, Defendants aver that both Sinasohn and Liggins were

subject to tax liens during a certain time frame. *See e.g.*, D.E. 151-1 at ¶ 82, 107, 306-07, 332-33. Defendants also allege that Sinasohn failed to pay a civil judgment entered against him while he was in private practice. D.E. 151-1 at ¶ 307. Additionally, Defendants make assertions that Sinasohn performed poorly as an attorney while in private practice. *Id.* Defendants make similar inflammatory allegations with respect to Liggins. Any legitimate relationship of these allegations to the causes of action pled in the Counterclaim is not immediately obvious. To the extent that Defendants intend to seek to file an amended proposed counterclaim, the Court cautions Defendants to ensure that all allegations contained in any such pleading have a legitimate purpose in relation to the cause of action pled. *See* Fed. R. Civ. P. 12(f) (authorizing the *sua sponte* striking of any "redundant, immaterial, impertinent, or scandalous matter").

## *CONCLUSION*

Because, for the foregoing reasons, the filing of Plaintiff's Counterclaim, Cross-Complaint, and/or Third-Party Complaint would be futile, I respectfully recommend that the Court deny Defendants' Motion for Leave to Amend to Add Supplemental Counterclaim, Cross-Claim, and/or Third Party Complaint [D.E. 151].

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*,

677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**FILED** and **SUBMITTED** at Fort Lauderdale, Florida this 23rd day of January 2011.

ROBIN S. ROSENBAUM
United States Magistrate Judge

cc: Honorable William J. Zloch
Counsel of Record