UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-82322-CIV-ZLOCH/ROSENBAUM

FEDERAL TRADE COMMISSION,

    Plaintiff,

vs.

FIRST UNIVERSAL LENDING, LLC,
a limited liability company;
SEAN ZAUSNER, individually and
as owner, officer, or manager of
First Universal Lending, LLC;
DAVID ZAUSNER, individually and
as owner, officer, or manager of
First Universal Lending, LLC; and
DAVID J. FEINGOLD, individually and
as officer or manager of First Universal
Lending, LLC,

    Defendants.
_____/

## ORDER ON MOTION TO COMPEL TESTIMONY OF MIRANDA JOHNSTON

This matter is before the Court upon Plaintiff's Motion to Compel the Testimony of Miranda Johnston ("Motion to Compel") [D.E. 167] pursuant to an Order of Referral from the Honorable William J. Zloch. [D.E. 172].  After reviewing the Motion to Compel, Defendants' Response in Opposition [D.E. 173], and the case file, the Court grants in part and denies in part the Motion to Compel.

### *BACKGROUND*

This case began as a civil enforcement action brought by Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") against Defendants First Universal Lending, LLC ("FUL"), Sean Zausner, David Zausner, and David Feingold ("Feingold") (collectively referred to as "Defendants").  More

specifically, on November 18, 2009, the FTC brought an action against Defendants pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, in relation to Defendants' allegedly deceptive practices, misrepresentations, and abusive telemarketing in connection with their offerings of mortgage loan modification and foreclosure rescue services. *See* D.E. 1, 160. The Complaint seeks injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts "in connection with the marketing and sale of mortgage loan modification and foreclosure relief services." *See* D.E. 1 at 2.

Contemporaneously with the filing of the Complaint, the FTC filed its *Ex Parte* Motion to File Papers Under Seal as well as its *Ex Parte* Emergency Motion for Temporary Restraining Order, Other Equitable Relief and an Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Emergency Motion"). D.E. 1, 5. On November 19, 2009, the Court issued an Order granting the Emergency Motion and issued a Temporary Restraining Order With Asset Freeze and Other Equitable Relief. D.E. 14. The November 19, 2009, Order, among other things, appointed a Temporary Receiver and directed Defendants to appear and show cause why the Court should not enter a preliminary injunction, pending a final ruling on the Complaint, enjoining Defendants from violating the FTC Act and the Telemarketing Sale Rule, and imposing additional relief. Pursuant to the Temporary Restraining Order, the FTC froze Defendants' assets and, through the Receiver, took custody of computers and other evidence in support of the FTC's claims.

The FTC later filed a Motion for Preliminary Injunction [D.E. 34, 35], in response to which the Court held a five-day hearing beginning on December 7, 2009. [D.E. 42, 44, 47-49]. After

hearing testimony presented by all of the parties, the Court entered a Preliminary Injunction [D.E. 53], based in part on its conclusion that good cause existed to believe that Defendants had engaged, and were likely to continue to engage, in acts or practices that violate the FTC Act and the Telemarketing Sales Rule. The Court also found good cause to believe that "immediate and irreparable damage to the Court's ability to grant effective final relief for consumers will occur from the sale, transfer, or other disposition or concealment by Defendants of their assets or corporate records unless Defendants are immediately restrained and enjoined by order of this Court." *Id.* at 2. During the Preliminary Injunction Hearing, Defendant Sean Zausner testified and indicated that Miranda Johnston ("Johnston") was a manager for First Universal Lending.

On February 1, 2010, the Court-appointed Receiver, through her agent, Tama Beth Kudman-Richman ("Kudman-Richman"), took the deposition of Johnston. The deposition began at approximately 2:30 p.m. and concluded at approximately 6:00 p.m. D.E. 167-1. During Johnston's deposition, she answered all questions posed to her regarding First Universal Lending, First Universal Holding, Sean Zausner, David Zausner, David Feingold, and her duties as an employee of the corporate Defendant. Johnston did not invoke her Fifth Amendment privilege at any time during her February 1, 2010, deposition. At the conclusion of the February 1, 2010, deposition, the Receiver noted that she had not exhausted her seven hours of deposition time, announced that she had no more questions for the day, but stated that she kept her options open with respect to whether to re-call Johnston. D.E. 167-1 at 138-39.

On November 4, 2010, the FTC served Johnston with a subpoena *duces tecum* seeking to depose Johnston on November 17, 2010. The FTC also sought for Johnston to bring to the deposition certain documents enumerated in an attachment to the subpoena. D.E. 165-1 at 2-11. In

response to the subpoena, Defendants filed a Motion for Protective Order of Non-Party Miranda Johnston's Deposition an/or in the Alternative, Motion to Quash Plaintiff's Subpoena Duces Tecum ("Motion for Protective Order"). D.E. 165. In their Motion for Protective Order, Defendants argued, among other things, that the deposition of Johnston should not be permitted because it would constitute the second deposition of Johnston and it had been set without seeking leave of Court. Defendants emphasized that Rule 30(a)(2)(A)(ii), Fed. R. Civ. P., provides that a party must seek leave of Court to take a deposition if "the deponent has already been deposed in the case." Because the FTC did not seek such leave, Defendants contended that it may not re-depose Johnston. Additionally, Defendants noted that counsel for the FTC, Gideon Sinasohn ("Sinasohn"), was present during the February 1, 2010, deposition of Johnston and opined that he had had "ample opportunity to prepare for and ask questions of [Johnston]." D.E. 165 at 2. Consequently, Defendants contended that permitting the FTC to re-depose Johnston would be unreasonably duplicative, and the burden and expense related to re-deposing Johnston would far outweigh the benefit. *Id.* at 3.

On November 16, 2010, the Court denied Defendants' Motion for Protective Order. The next day, on November 17, 2010, Johnston appeared for her deposition. After stating her first name and spelling her last name, however, Johnston answered each of the FTC's deposition questions by invoking her right to assert the Fifth Amendment. *See* D.E. 167-2. Due to Johnston's refusal to answer his questions, Sinasohn filed the pending Motion to Compel on behalf of the FTC. The FTC argues that Johnston should not be allowed to assert a blanket refusal to answer all questions that were posed to her during the November 17, 2010, deposition. Because Johnston answered all of the questions during her February 1, 2010, deposition, the FTC contends that Johnston has waived her

4

Fifth Amendment privilege with respect to those areas of inquiry. Likewise, the FTC argues that Johnston should be compelled to answer questions to which no Fifth Amendment privilege applies since Johnston cannot assert the privilege to avoid giving testimony that she simply would prefer not to give. D.E. 167 at 4 (citing *Winfield v. Roberts*, 445 U.S. 552, n. 7 (1980)). For these reasons, the FTC requests that the Court compel Johnston to answer the questions posed to her during the November 17, 2010, deposition.

In response to the Motion to Compel, Defendants filed their Memorandum of Law in Opposition to Plaintiff's Motion to Compel the Testimony of Miranda Johnston (the "Opposition"). [D.E. 173]. The Opposition raises some of the same arguments asserted in Defendants' previously filed Motion for Protective Order, but also relies upon additional arguments in support of its position that Johnston should not be compelled to sit for another deposition. First, Defendants argue that the February 1, 2010, deposition lasted several hours and that Sinasohn had the opportunity to ask questions of Johnston. Next, Defendants opine that Johnston properly exercised her right to invoke the Fifth Amendment privilege against self-incrimination based on her fear that the FTC would use any statements made at the November 17, 2010, deposition that differed from any statements made at the first deposition against her in a perjury action. According to Defendants, it is "fundamentally unfair to be able to re-depose [Johnston] on the exact same questions as the first deposition in hopes of "tripping her up" and creating inconsistencies." D.E. 173 at 2-3. Finally, Defendants contend that in seeking to compel another deposition, the FTC attempts to cause annoyance, undue burden, and expense.

## *DISCUSSION*

**1.       Johnston's Assertion of the Fifth Amendment Privilege**

The Court first addresses Defendants' contention that Johnston was justified in invoking her Fifth Amendment right during the FTC's November 17, 2010 deposition. The Fifth Amendment of the United States Constitution establishes the privilege against self-incrimination. *In re Keller Financial Services of Florida, Inc.*, 259 B.R. 391 (M.D. Fla. 2000). Although the Fifth Amendment may be asserted in connection with civil litigation, a deponent is not immunized from answering questions merely because she declares that such testimony would incriminate her. *Hoffman v. United States*, 341 U.S. 479, 486 (1951) ("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified.").

Instead, in order properly to invoke her Fifth Amendment privilege, Johnston must establish a good-faith belief that her testimony might incriminate her. *United States v. Goodwin*, 625 F.2d 693, 700 (5th Cir. 1980)[1] (Fifth Amendment privilege is applicable where the defendant has "reasonable cause to apprehend danger from a direct answer."); *U.S. v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998). The standard for determining whether a claim of privilege is justified is whether the claimant is "confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *United States v. Apfelbaum*, 445 U.S. 115 (1980); *Marchetti v. United States*, 390 U.S. 39 (1968).

Based upon all of the circumstances of the case, the Court determines whether the Fifth

---

[1] Decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Amendment privilege is well-founded. *Hoffman*, 341 U.S. at 486-87. The party attempting to invoke the Fifth Amendment privilege bears the burden of establishing the foundation for the assertion of the privilege. *Camelot Group, Ltd. v. W.A. Krueger Co.*, 486 F. Supp. 1221 (S.D.N.Y. 1980) (citing *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976)). In considering whether the witness has satisfied this standard, the Court may not permit a witness to refuse to testify where the witness has no good-faith basis for invoking the privilege or where a narrower privilege would adequately protect the witness. *Id.* And, where a witness makes a blanket assertion of the Fifth Amendment privilege, the court's duty to scrutinize such invocation is particularly weighty. *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980).

Here, Johnston states as a basis for her blanket invocation of the Fifth Amendment privilege her belief that her testimony in response to deposition questions would subject her to a perjury prosecution. Specifically, Defendants point to the fact that during the November 17, 2010, deposition, FTC attorney Sinasohn stated on the record, "Ms. Johnston, you're still under oath and the testimony that you give is still subject to the same [sic] as if it was testimony given before a judge or jury under penalty of perjury." *See* D.E. 167-2 at 22. Defendants argue that questions similar to those asked by the Receiver combined with Sinasohn's alleged "threat of perjury" would likely create a real and substantial danger that answers which deviated from the first deposition would result in a perjury prosecution.

This Court disagrees that the circumstances provided Johnston with "reasonable cause to apprehend danger from a direct answer." First, the Court notes that Sinasohn did not begin the November 17, 2010, deposition by threatening Johnston or even stating that Johnston's testimony would be given under penalty of perjury. Indeed, Sinasohn began the deposition and posed

approximately thirty questions to Johnston before making what Defendants characterize as a "threat of perjury." It was only after Johnston invoked her Fifth Amendment privilege and the attorneys considered contacting the Court with the discovery dispute that Sinasohn made the statement to Johnston. Specifically, the parties discussed the Fifth Amendment issue and contacted Judge Zloch's chambers in an attempt to resolve the issue of whether Johnston could be compelled to answer the deposition questions. The Court told Sinasohn to move forward with the deposition and then, if necessary, file a motion afterward. Sinasohn did not remind Johnston that she remained under oath and her testimony was still given under penalty of perjury until that time.

Because of the timing of the statement, Johnston could not have apprehended a perjury prosecution when she answered the first thirty questions by invoking the Fifth Amendment privilege because Sinasohn had not yet made his alleged "threat." The Court also finds that the statement made by Sinasohn was not a threat, but rather a reminder to Johnston that she was still under oath. Nor was the reminder gratuitous in light of the break in deposition testimony. Nothing about Sinasohn's statement was threatening or menacing. Instead, the statement is more appropriately characterized as a generic instruction that is given to most deponents during their deposition testimony. Because of the timing of Sinasohn's statement as well as the manner in which it was delivered, the Court finds that the statement would not give Johnston reason to believe that Sinasohn actively sought to seek perjury charges against Johnston.

Next, Johnston herself never indicated that she had reason to believe that she would be subject to criminal prosecution if she answered Sinasohn's deposition questions. In fact, after Johnston asserted the Fifth Amendment privilege numerous times, Sinasohn pointedly asked Johnston, "Do you have any reasonable cause to apprehend that you might be subject to criminal

8

prosecution for answering these questions?" *See* D.E. 167-2 at 13.  Although given the opportunity, Johnston did not provide any basis for her reason to believe that she would be subject to criminal prosecution if she answered the questions posed during the deposition.  To the contrary, Johnston merely responded to the question by again stating, "I plead the Fifth Amendment." *Id.*  Johnston's lack of indication that she had reasonable cause to believe that she would be subject to criminal prosecution if she answered the questions further supports the finding that Johnston did not reasonably believe that Sinasohn sought to bring perjury charges against her.

      Finally, in reviewing the types of questions to which Johnston invoked the Fifth Amendment during her November 17, 2010, deposition, the Court notes that Johnston did not assert the privilege to only particular types of questions, but instead, she made a blanket assertion of her Fifth Amendment right to *all* questions posed by Sinasohn.  In this regard, Johnston refused to answer even the most innocuous questions, such as (1) "Are you represented here today?" (2) "Where did you go to high school?" (3) "Did you have any post high school education?" (4) "What is your residence?" (5) "What is your date of birth?" and other similar questions.  Johnston's refusal to answer even these benign questions provides a strong indication that she simply did not want to answer any questions at all.  Johnston's refusal militates against a finding that she apprehended that she would be subject to criminal prosecution if she answered the questions.  Accordingly, the Court finds based on the circumstances that Johnston had no reasonable basis to believe that she was confronted by a substantial and real hazard of incrimination.[2]

---

    [2]    Nor can the Court find a case that stands for the proposition that fear of a perjury charge resulting solely from the inconsistency between prior truthful testimony and yet-ungiven future testimony provides a sufficient basis for invoking the Fifth Amendment privilege.  Indeed, the primary case cited by Defendants, *United States v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998), indicates,

## 2.      A Portion of the Discovery Sought is Duplicative

Notwithstanding the Court's determination that Johnston did not have a reasonable basis to believe that her answers would subject her to perjury charges and, therefore, could not blanketly refuse to answer any questions on Fifth Amendment grounds, the Court considers Defendants' contention that the FTC's Motion to Compel should be denied because allowing another deposition of Johnston would be unreasonably duplicative and impose an undue burden on Johnston. In determining whether Defendants' argument has support, the Court examined the questions posed to Johnston at both the February 1, 2010, deposition and the November 17, 2010, deposition. After this review, the Court finds that many of the questions that Sinasohn asked are the same as those posed by the Receiver at Johnston's first deposition.

Rule 30(a)(2)(A)(ii), Fed. R. Civ. P., provides that a party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2), if the parties have not stipulated

---

> A witness may not claim the privilege of the [F]ifth [A]mendment out of fear that he will be prosecuted for perjury for what he is about to say. The shield against self-incrimination in such a situation is to testify truthfully, not to refuse to testify on the basis that the witness may be prosecuted for a lie not yet told.

*Vavages,* 151 F.3d at 1192 (citing *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986); *See also Gersten v. Rundle*, 833 F. Supp. 906 (S.D. Fla. 1993) ("presumably, he will tell the truth and could prevail on the merits in any subsequent perjury trial."). Similarly, Defendants' perjury trap argument also fails. A perjury trap occurs when the government calls a witness before the grand jury for the primary purpose of obtaining testimony from her in order to prosecute her later for perjury. *Gersten*, 833 F. Supp. at 911-12 (quoting *United States v. Chen*, 933 F.2d 793, 796 (9th Cir. 1991) (citation omitted)). In addition, the government must use its subpoena power to obtain the perjury indictment "on matters which are neither material nor germane to a legitimate ongoing investigation of the grand jury." *Id.* (quoting *Chen*, 933 F.2d at 796). In this case, the Court need not consider the content of Sinasohn's questions to find the perjury trap doctrine inapplicable. Where, as here, the government does not use its investigatory powers to question a witness before the grand jury, no perjury trap can occur. *See United States v. McKenna*, 327 F.3d 830, 837-38 (9th Cir. 2003).

to the deposition and the deponent has already been deposed in the case. Here, the Court previously allowed Johnston's deposition to proceed when it denied Defendants' Motion for Protective Order in November of 2010. Accordingly, the FTC has already obtained the Court's permission to depose Johnston.[3] Additionally, contrary to Defendants' contention that Johnston appeared at her first deposition "where she was deposed to completion" [D.E. 173 at 6], a review of Johnston's February 1, 2010, deposition transcript reveals the opposite. Indeed, as noted previously, at the conclusion of the February 1, 2010, deposition, the Receiver expressly noted that she had *not* exhausted her seven hours of deposition time, announced that she had no more questions *for the day*, but stated that she *kept her options open* with regard to whether to re-call Johnston.[4] D.E. 167-1 at 138-39. Thus, based upon the Court's prior ruling and the fact that Johnston was never released from her first deposition, the FTC is able to call Johnston to continue her deposition.

The Court's inquiry, however, does not end here. Rule 26(b)(2), Fed. R. Civ. P., endows the Court with the authority and the responsibility to limit discovery sought by the parties if the information sought is cumulative or duplicative. More particularly, Rule 26(b)(2)(C) provides,

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or local rules if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain

---

[3] At that time, of course, Judge Zloch had no way of knowing and could not have foreseen that the FTC would use the opportunity to ask many of the same questions that Johnston had already answered in her first deposition.

[4] These facts, in and of themselves, distinguish the circumstances of this case from those present in *Arugu v. City of Plantation*, 2010 WL 2609394 (S.D. Fla. June 27, 2010), where the witness could not be re-deposed because, among other reasons, the witness had previously been deposed to completion.

the information by discovery in the action.

Rule 26(b)(2)(C), Fed. R. Civ. P. After reviewing the questions posed to Johnston at both the February 1, 2010, and the November 17, 2010, depositions, the Court finds that many of the questions are duplicative. Consequently, the scope of Johnston's continued deposition should be limited.

At both depositions, for example, Johnston answered questions regarding her background and education, her job responsibilities at First Universal Lending and First Universal Holdings, David Feingold's affiliation with First Universal Lending and First Universal Holdings, Johnston's interaction with David Feingold while she worked for First Universal Lending, as well as other areas of inquiry. Because some of the questions posed by Sinasohn are nearly identical to those posed by the Receiver, the Court finds these questions to be unreasonably duplicative. Thus, in the interest of efficiency, the FTC may not reiterate questions previously posed to Johnston during the February 1, 2010, deposition. Consequently, although Sinasohn may re-depose Johnston, his inquiry is limited to questions not already asked by the Receiver during Johnston's first deposition.

In addition, the Court notes that only 3 ½ hours remain of the presumptive time limit on depositions in this district. Accordingly, the FTC shall complete its deposition of Johnston within this period.

## *CONCLUSION*

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel the Testimony of Miranda Johnston [D.E. 167] is **GRANTED IN PART AND DENIED IN PART**,

consistent with the terms of this Order. Johnston's deposition must be completed prior to the end of the discovery period – March 5, 2011.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 12th day of February 2011.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

cc: Honorable William J. Zloch
    Counsel of Record