UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
CASE 09-82322-CIV-ZLOCH/ROSENBAUM

FEDERAL TRADE COMMISSION

Plaintiff,

vs.

FIRST UNIVERSAL LENDING, LLC,
SEAN ZAUSNER, DAVID ZAUSNER,
and DAVID J. FEINGOLD

Defendants.

FT. LAUDERDALE, FLORIDA
JANUARY 31, 2011
MONDAY - 9:30 A.M.

---

TRANSCRIPT OF MOTION TO ENJOIN PROSECUTION
[EXCERPT - PLAINTIFF'S REBUTTAL ARGUMENT]
BEFORE THE HONORABLE ROBIN ROSENBAUM,
UNITED STATES MAGISTRATE JUDGE
DAY 4

APPEARANCES:

FOR THE PLAINTIFF:

GIDEON E. SINASOHN, ESQ.
HAROLD E. KIRTZ, ESQ.
Federal Trade Commission
225 Peachtree Street, NE
Suite 1500
Atlanta, GA 30303-1729 404/656-1366
Email: gsinasohn@ftc.gov
Email: hkirtz@ftc.gov

FOR THE DEFENDANTS:

DAVID JON FEINGOLD, ESQ.
Feingold & Kam LLC
5100 PGA Blvd. 2nd Floor
Palm Beach Gardens, FL 33418
561-630-6727 ext. 205

TOTAL ACCESS COURTROOM REALTIME TRANSCRIPTION

REPORTED BY:

ROBIN MARIE DISPENZIERI, RPR-CM
Official United States Court Reporter
Wilkie D. Ferguson Federal Courthouse
400 No. Miami Ave., Ste. 08S67
Miami, FL 33128-7792 305/523-5659
(Fax) 305/523/5639
Email: Robinc1127@aol.com

******************************************

THE COURT: All right. Thank you.

Mr. Sinasohn, let me start by asking you the same thing that I asked of Mr. Feingold. Are you aware of whether there is any reason, if I decided hypothetically that the information could not be reconstructed, are you aware of whether there is anything that would prevent me legally from recommending to Judge Zloch that this issue may be made a jury issue and be handled and resolved by the jury, with respect to whose fault it is as to why the evidence is gone and what, if any, inference should be drawn from that?

MR. SINASOHN: We are not sure, Your Honor, if a case in equity would actually go to the jury or to the trier of fact. We would say, in answer to that, that where there is a certainty about calculating the redress --

THE COURT: I'm sorry. Is the jury not the trier of fact in this case?

MR. SINASOHN: My understanding is that there's not a jury in this case, Your Honor. My understanding is that this is a case tried in equity by the Court. That's my understanding.

THE COURT: Mr. Feingold, then I'm sorry, I don't know off the top of my head.

MR. FEINGOLD: It is an issue that has been briefed on a motion before Your Honor.

THE COURT: All right, I apologize. Believe it or not, this is not the only case that I have active at the moment. I know it may feel like that over the last few days, but it's really not.

MR. SINASOHN: Could you restate the question, Your Honor.

THE COURT: Sure. If for some reason it is not tried to the bench, but instead is tried to a jury, is there some reason why this cannot be submitted to a jury?

MR. SINASOHN: We are not aware of any reason why this wouldn't be part of the Judge's decision or if it's a jury as the trier of fact, Your Honor.

THE COURT: Your position is that, regardless, this whole thing is going to be tried to the bench any way, so I may as well decide it now because the bench is going to decide it later any way, right? Is that what you are saying?

MR. SINASOHN: We didn't bring the motion. We are not asking you to decide it now. They asked you to decide it now. Yes, we think that you can decide it based on what you heard.

THE COURT: I certainly can decide it. My question is something other than that.

Let me ask you to set aside the whole bench trial issue and assume for purposes of our discussion that -- again, I don't know. It may be the case that because it is considering an equity matter -- at least, the remedies

certainly are. Because it is considered an equitable matter, then the Court would have to deal with it. I don't know off the top of my head. I'm sorry, I just haven't had a chance to examine that yet.

For purposes of this argument, let's assume that, at least, part of this is triable to a jury. Again, I am not in any way opining that I made this decision. I have no idea. I am not going to be able to come back and ask you later. If part of this is triable to a jury, is there any reason why the issue of whose fault the destruction of a document is should not also be submitted to a jury?

MR. SINASOHN: If this case were to survive a motion for summary judgment, then the answer would be there is no reason that this issue could not also be submitted to either a jury or a trier of fact. We do not believe that it can survive a motion for summary judgment.

THE COURT: If there is any part of this that is a jury issue, and if this issue can also be submitted to the jury, how would the case not survive the motion for summary judgment? If I were to find that this is a jury issue, then there would be a material issue of fact because that then would drive what the inference is. Am I missing something?

MR. SINASOHN: If the Court were to determine that it is a triable issue of fact, then that would defeat a motion for summary judgment. We are of the position that it is not a

triable issue of fact.

We believe that when the defendants are the party that created this uncertainty by destroying evidence, they bear the risk of determining -- of answering the question about why there is uncertainty as to the evidence that they have destroyed.

THE COURT: I'm sorry to interrupt. I don't want you to waste your own time.

Why don't you address the issues, which are whether we can find this information anywhere else and if not, whose fault that is.

MR. SINASOHN: Yes, Your Honor. We believe that this is Mr. Feingold and his co-defendants. It's an elaborate shell game.

THE COURT: Again, can you address the first issue for me, which is can you get this information anywhere?

MR. SINASOHN: I believe that we have bank statements from the defendants. We can use their deposits, and I believe that the case law allows us to use those more gross estimates to calculate the damages in this case that we can't establish because of what the defendants destroyed.

I can point the Court to case law that would help the Court to determine that we are allowed to use these more gross estimates and that the uncertainty, the risk of uncertainty about calculating --

THE COURT: I am familiar with that. That's almost when you get to the penalty phase. We are sort of pre supposing that there is liability.

Let's talk about the liability phase. You didn't put any bank statements or deposits or gross estimates into evidence. So, how can I determine whether that information will suffice to allow the defendants to defend themselves?

MR. SINASOHN: Those are already part of the record, Your Honor. If you look at Mr. Liggins's first declaration that was submitted after the preliminary injunction order, that was Exhibit 19. The supplemental was Exhibit 37. He discussed the banks statements.

In Exhibits 2 through 17 there is additional evidence. Those were the consumer declarations. That establishes the liability together with Mr. Liggins's deposition, which is 19 and 37, together with the declaration of Mr. White, who was the BBB President or Vice President. That is Exhibit 18 from the PI hearing.

We introduced all of the evidence that we believe that we need to, to establish liability at the preliminary injunction hearing. This hearing, we were understanding, was not for that purpose, but was for the purpose of showing that we did not know nor knew or consented to the destruction by the defendants of evidence --

THE COURT: Let me interrupt you. It's not about what

you can prove. It's about whether they have an ability to defend themselves in the absence of the information that was destroyed.

Before we get to the issue of whose fault the destruction is, I need you to tell me whether they have an ability to defend themselves based on what's left, and when you refer to these things that are in the record from the preliminary injunction, it's not immediately obvious to me how a handful of consumer affidavits and the affidavit of the President of the Better Business Bureau will allow them to defend themselves against allegations that in all, or substantially all, cases they did not provide loan modifications.

So, what I need you to do is tell me, first of all, whether there is evidence available in the absence of the destroyed evidence that will allow them to defend themselves, and if so, what it is.

In order to tell me what it is, you have to explain how they can use it to defend themselves. I apologize, maybe it's immediately obvious to you, but it's not immediately obvious to me. If there is this evidence, then we get to the next issue.

MR. SINASOHN: I think that much of the evidence that could have been used to defend them they have destroyed; however, I think they could also go to Salesforce and they

could look at each and every entry in Salesforce, look at the people and read the entries they made on behalf of customers, and see if those customers were satisfied or not. That's one place.

I do think they have made it extremely difficult because what they have done is they have attempted, I believe, to destroy things and then come to the Court and tell the Court; "Well, we have destroyed it, but now that we have destroyed it we are asking for mercy of the Court throughout the case, even though the plaintiff has nothing to do with their destruction."

We demonstrated we didn't know about it. We didn't consent. But yes, if they wanted to, they could go to Salesforce. They could contact each and every client.

THE COURT: How is that reasonable? What are they going to call in 500,000 witnesses? How is that going to work?

MR. SINASOHN: I think they could contact a representative sampling, much like we did. It is our understanding from Salesforce there are not 500,000. Our understanding is there are 17,000, or thereabouts.

This is not evidence here, but you asked me what they could use. I looked at Salesforce and I see 17,000 customers from January 1st through November 19th of 2009. They could look at that.

MR. FEINGOLD: Your Honor, I would just like to say

that --

THE COURT: He didn't interrupt you during your argument.

MR. FEINGOLD: I'm sorry, you are right.

MR. SINASOHN: That would be the place that I would look to. I would look to the fact that those phone numbers are still there.

The case is, Your Honor, that we have alleged that the defendants have promised to people that in all, or substantially all, cases they can substantially reduce their mortgage loans. It has been mischaracterized by Mr. Feingold that we have to somehow prove that they in all of them have done that.

That's not what we have to prove. We only have to prove that they told people that in all, or virtually all --

THE COURT: It's only a problem if they didn't actually do it. There is nothing wrong or misleading about telling people that in all, or substantially all, cases they reduced mortgage payments if they, in fact, did it, right?

MR. SINASOHN: Absolutely. And they didn't. The reason that we know they didn't, all the evidence that they claim was destroyed after the preliminary injunction hearing that they had at the time of the preliminary injunction, they presented none of that.

They could now go to Salesforce. They could go on and

find consumers. They could find, I guess, a representative sampling that could come in and use that.

Although, I do think they did their best to destroy the evidence that they need to defend themselves.

Do they have the evidence that they need to defend themselves? It's a question, I think Salesforce is a good place to start.

They, themselves, testified that you can't do it. Mr. Christakos got up there and I asked him; "Can you generate loan modification success rates?" No. Then they themselves said you can't do it because they know that's only thing left.

I do think with difficulty you could come up with some number or you could come up with some idea of people that were satisfied. I don't think it's the best evidence, no. I think that evidence was destroyed purposefully by the defendants.

THE COURT: All right.

Anything further?

MR. SINASOHN: I would like to say, Your Honor, the FTC has no duty to make images of computers. The FTC has no duty to provide images of computers.

THE COURT: I think all of that is true. One of the questions is whether they fairly could have been under the impression that you had copies of all of the computers and that they were supposed to have destroyed all the records.

I understand your argument that they shouldn't have

been under that impression because, although there was the scrub provision within the injunction order, there was also a provision that required that information not be destroyed or deleted. I do understand that.

I don't think that there is any question at this point that you are required to copy every single computer. If you went into a business that had 2,000 computers, I guess, finding on the circumstances you would have to. I think it would be a pretty unusual situation where sampling computers and looking for which computers had information on them and finding the servers wouldn't suffice.

I think it would be a rare situation where you would have to go and copy them all. When you are talking about numbers, I mean, at some point that's probably fine. I don't have any preconceptions that the FTC is required to go in and copy every single computer no matter where it goes when it executes an order, but that's beside the point. That's not really the issue.

MR. SINASOHN: Also, Your Honor, in this case, the FTC never told anybody that we imaged all the computers. There may have been some misperceptions by the receiver or there may have been some misperceptions by someone else. We never caused those misperceptions.

In fact, Mr. Feingold mentioned talking to me and he couldn't talk to me --

THE COURT: Regardless of who may have caused the misperceptions, if there were actually misperceptions as opposed to bad faith, what should I do with that?

MR. SINASOHN: I think there is bad faith. I think that what you saw in this case is that the defendants consistently misdirected the receiver. Consistently, that everything was on Salesforce for the purpose of confusing them, and then didn't tell them that there were any servers.

There are four missing servers that we had never been told about. Mr. Feingold testified that if you have the servers, you have everything. So, we know they misdirected the receivers to believe -- and then he wanted me to go on the stand. He told you; "I want to put Mr. Sinasohn on the stand so he can --"

THE COURT: Let's not get into that.

MR. SINASOHN: Basically, the idea is they misdirected to Salesforce. They took the servers that had everything on them, destroyed them. Didn't tell me, didn't have my consent, and then come to the Court and are asking for relief for their bad faith acts.

The only law, the law that Mr. Feingold should have been paying attention to, was the P.I. He should have been paying attention to the "E-Discovery" rules. The defendants are the ones that had the duty to preserve this evidence, and they did not comply with that duty.

THE COURT: Yes, but this isn't your run of the mill case where you are talking about ESI and discovery obligations and preservation and holds. This isn't your run of the mill case where, you know, the parties are each in control of their own information.

I mean, at some point in time the receiver came in, and whether other people had asked this or not, the receiver had asked this. So, it's not your usual kind of case. It seems to me that it doesn't neatly fall into that category of cases, the [unintelligible] like type cases. Maybe I am missing something. You can direct me if you think I am.

MR. SINASOHN: The only thing I would finally point out, Your Honor, there was some discussion about the FTC's concern about evidence. We hope that the Court is focused on the reason that we were concerned is only for the customer's personally identifiable information.

THE COURT: I understand exactly what you were trying to do. As I said, there is no doubt in my mind that what was intended was if the information, if the computers were transferred, that no personally identifiable information be transferred to third parties. I do understand that. But that doesn't answer the question. That doesn't resolve the issue.

What you guys thought you were doing does not necessarily answer the question. I mean, there may be other things that do, but that's not it.

MR. SINASOHN: The answer then goes to the next question in your order; which is, was there bad faith or not. The answer, from our point of view, is Mr. Feingold discussed us sending Mr. Maglore to him and why would we do that if we distrusted him. That was on the 20th of November.

When Mr. Feingold represented himself; "I am the attorney for the company," yes, we sent this gentleman to him to locate, after we didn't know about the other offices across the breeze way, we sent him over to Mr. Feingold.

What we didn't realize at the time was how incredibly deceitful the defendants were. They had hidden from us the offices across the breeze way. They had hidden from us the third floor offices. They had hidden from us the Pompano Beach location. This is a bad faith destruction of the evidence by the defendants for the purposes of asking you for relief.

That's the whole point of why they did this. They hid these servers. They told us that they were -- they never mentioned the servers to us until this hearing. They always pointed to Salesforce until this hearing when they then came to the hearing and said you can't do anything with Salesforce. The evidence may not be there if you don't like Salesforce.

I think you could do something with Salesforce. If the Court doesn't like Salesforce, we hope that the Court finds that the destruction by the defendants was opportunistic. They used the confusion that they sowed in this case to destroy

evidence that they thought they could convince you they needed to defend themselves. If they don't have ways to defend themselves, it's because of their bad faith.

THE COURT: All right, thank you.

Mr. Feingold?

MR. FEINGOLD: I'm sorry for interrupting. When Mr. Sinasohn was saying; "I have seen Salesforce on 17,000 clients," it goes to my issue about his testimony. That's it.

I am not going to respond, Judge. You know the whole story. You know the whole story, and I am sure everyone here in the courtroom will appreciate the extraordinary amount of time you've taken. You did make us feel like this was your only case, by the way.

THE COURT: It felt that way too, but sadly, it's not. Well, not sadly.

MR. SINASOHN: For the record, Your Honor, there are people at the FTC aside from myself that would be the proper person to testify about what is on Salesforce. I just provided that information because it sounded like you were asking me what is out there to the defendant. I would not be the person that would be testifying about Salesforce.

THE COURT: I understand, although I did ask in the order for you to provide evidence regarding what other evidence was out there or how they could defend themselves against it, basically. It wasn't in exactly those words, but that was the

gist of it. If you had any evidence in that regard, I would have hoped that you would have put it on during the four days of testimony we had.

MR. SINASOHN: We think it's in evidence.

THE COURT: I am going to take this under advisement, go back and go carefully through all of the evidence. I will issue a ruling after I have had a chance to do that.

Thank you. We are in recess.

[Proceedings conclude at 5:45 p.m.]

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

/S/ ROBIN MARIE DISPENZIERI, RPR

______________ ______________________________________

DATE FILED

ROBIN MARIE DISPENZIERI, RPR
Official Federal Court Reporter
United States District Court
Wilkie D. Ferguson Federal Courthouse
400 No. Miami Avenue, Ste. 08S67
Miami, FL 33128 305/523-5659
Email: robinc1127@aol.com

**A**
ability 8:1,6
able 5:8
above-entitled 17:12
absence 8:2,15
Absolutely 10:20
ACCESS 1:25
accurate 17:11
active 4:2
acts 13:20
additional 7:13
address 6:9,15
advisement 17:5
affidavit 8:9
affidavits 8:9
allegations 8:11
alleged 10:8
allow 7:7 8:10,16
allowed 6:23
allows 6:19
amount 16:11
answer 3:14 5:13 14:22,24 15:1,3
answering 6:4
anybody 12:20
apologize 4:1 8:19
APPEARANCES 1:14
appreciate 16:11
argument 1:12 5:5 10:3 11:25
aside 4:22 16:17
asked 3:4 4:18 9:21 11:9 14:7,8
asking 3:3 4:18 9:9 13:19 15:15 16:19
assume 4:23 5:5
Atlanta 1:18
attempted 9:6
attention 13:22,23
attorney 15:7
available 8:15
Ave 2:3
Avenue 17:17
aware 3:4,6 4:10
A.M 1:8

**B**
back 5:8 17:6
bad 13:3,4,20 15:2,14 16:3
bank 6:17 7:5
banks 7:12
based 4:19 8:6
basically 13:16 16:25
BBB 7:17
Beach 1:22 15:13
bear 6:3
behalf 9:2
believe 4:1 5:15 6:2,12,17,18 7:19 9:6 13:12
bench 4:8,14,15,22
best 11:3,14
Better 8:10
Blvd 1:22
breeze 15:9,12
briefed 3:24
bring 4:17
Bureau 8:10
business 8:10 12:7

**C**
C 17:10,10
calculate 6:20
calculating 3:15 6:25
call 9:16
can't 6:20 11:8,11 15:20
carefully 17:6
case 1:3 3:12,17,19,20 4:2,24 5:12 5:19 6:19,20,22 9:10 10:8 12:19 13:5 14:2,4,8 15:25 16:13
cases 8:12 10:10,18 14:10,10
category 14:9
caused 12:22 13:1
certainly 4:20 5:1
certainty 3:15
certify 17:11
chance 5:3 17:7
Christakos 11:9
circumstances 12:8
claim 10:22
client 9:14
clients 16:8
come 5:8 9:7 11:2,12,13 13:19
Commission 1:4,17
company 15:7
comply 13:25
computer 12:6,16
computers 11:19,20,23 12:7,9,10 12:20 14:19
concern 14:14
concerned 14:15
conclude 17:9
confusing 13:7
confusion 15:25
consent 9:13 13:18
consented 7:23
considered 5:1
considering 4:25
consistently 13:6,6
consumer 7:14 8:9
consumers 11:1
contact 9:14,17
control 14:4
convince 16:1
copies 11:23
copy 12:6,13,16
couldn't 12:25
Court 1:1 2:2 3:2,16,20,22 4:1,7,13 4:20 5:2,17,23 6:7,15,22,23 7:1 7:25 9:7,8,9,15 10:2,16 11:16,21 13:1,15,19 14:1,14,17 15:23,23 16:4,14,22 17:5,16,16
Courthouse 2:2 17:17
courtroom 1:25 16:11
co-defendants 6:13
created 6:3
customers 9:2,3,22
customer's 14:15

**D**
D 2:2 17:17
damages 6:20
DATE 17:15
DAVID 1:8,9,21
DAY 1:13
days 4:3 17:2
deal 5:2
deceitful 15:11
decide 4:15,15,18,18,19,20
decided 3:5
decision 4:11 5:7
declaration 7:9,16
declarations 7:14
defeat 5:24
defend 7:7 8:2,6,11,16,19,24 11:4 11:5 16:2,2,24
defendant 16:20
defendants 1:10,20 6:2,18,21 7:7 7:24 10:9 11:15 13:5,23 15:11 15:15,24
deleted 12:4
demonstrated 9:12
deposition 7:15
deposits 6:18 7:5
destroy 9:7 11:3 15:25
destroyed 6:6,21 8:3,16,24 9:8,9 10:22 11:15,24 12:3 13:18
destroying 6:3
destruction 5:10 7:23 8:5 9:11 15:14,24
determine 5:23 6:23 7:6
determining 6:4
didn't 4:17 7:4 9:12,12 10:2,16,20 10:21 13:8,18,18 15:8,10
difficult 9:5
difficulty 11:12
direct 14:11
discovery 14:2
discussed 7:11 15:3
discussion 4:23 14:13
DISPENZIERI 2:1 17:14,15
District 1:1,1 17:16
distrusted 15:5
DIVISION 1:2
document 5:10
doesn't 14:9,22,22 15:23
doing 14:23
don't 3:22 4:24 5:2 6:7,9 11:14 12:5,14 15:21 16:2
doubt 14:18
drawn 3:11
drive 5:22
duty 11:19,20 13:24,25

**E**
E 1:16,16 17:10,10
either 5:14
elaborate 6:13
Email 1:19,19 2:4 17:18
ENJOIN 1:11
entries 9:2
entry 9:1
equitable 5:1
equity 3:13,20 4:25
ESI 14:2
ESQ 1:16,16,21
establish 6:20 7:20
establishes 7:14
estimates 6:19,24 7:5
evidence 3:10 6:3,5 7:6,13,19,24 8:15,16,21,23 9:21 10:21 11:4,5 11:14,15 13:24 14:14 15:14,21 16:1,23,23 17:1,4,6
exactly 14:17 16:25
examine 5:4
EXCERPT 1:12
executes 12:17
Exhibit 7:11,11,17
Exhibits 7:13
explain 8:18
ext 1:23
extraordinary 16:11
extremely 9:5
E-Discovery 13:23

**F**
F 17:10
fact 3:14,17 4:12 5:15,21,24 6:1 10:6,19 12:24
fairly 11:22
faith 13:3,4,20 15:2,14 16:3
fall 14:9
familiar 7:1
fault 3:10 5:10 6:10 8:4
Fax 2:4
Federal 1:4,17 2:2 17:16,17
feel 4:3 16:12
Feingold 1:9,21,21 3:4,22,24 6:13 9:25 10:4,11 12:24 13:10,21 15:3,6,9 16:5,6
felt 16:14
Ferguson 2:2 17:17
FILED 17:15
finally 14:12
find 5:20 6:10 11:1,1
finding 12:7,10
finds 15:23
fine 12:14
first 1:8 6:15 7:9 8:14
FL 1:22 2:3 17:18
floor 1:22 15:13
FLORIDA 1:1,7
focused 14:14
foregoing 17:11
four 13:9 17:2
FT 1:2,7
FTC 11:19,19 12:15,19 16:17
FTC's 14:13
further 11:17

**G**
GA 1:18
game 6:14
Gardens 1:22
generate 11:9
gentleman 15:7
GIDEON 1:16
gist 17:1
go 3:13 8:25 9:13 10:25,25 12:13 12:15 13:12 17:6,6
goes 12:16 15:1 16:8
going 4:14,15 5:8 9:16,16 16:9 17:5
good 11:6
gross 6:19,23 7:5
gsinasohn@ftc.gov 1:19
guess 11:1 12:7
guys 14:23

**H**
handful 8:9
handled 3:9
HAROLD 1:16
haven't 5:3
head 3:23 5:3
heard 4:19
hearing 7:18,21,21 10:22 15:18,19 15:20
help 6:22
hid 15:16
hidden 15:11,12,13
hkirtz@ftc.gov 1:19
holds 14:3
Honor 3:12,19,25 4:6,12 6:12 7:9 9:25 10:8 11:18 12:19 14:13 16:16
HONORABLE 1:12
hope 14:14 15:23
hoped 17:2
hypothetically 3:5

**I**
idea 5:7 11:13 13:16
identifiable 14:16,20
imaged 12:20
images 11:19,20
immediately 8:8,20,20
impression 11:23 12:1
incredibly 15:10
inference 3:11 5:22
information 3:6 6:10,16 7:6 8:2 12:3,10 14:5,16,19,20 16:19
injunction 7:10,21 8:8 10:22,23 12:2
intended 14:19
interrupt 6:7 7:25 10:2
interrupting 16:6
introduced 7:19
isn't 14:1,3
issue 3:8,9,24 4:23 5:10,14,18,18 5:20,21,24 6:1,15 8:4,22 12:18 14:22 16:8 17:7
issues 6:9
it's 4:4,11 6:13 7:25 8:1,8,20,20 10:16 11:6,14 14:8 16:3,14 17:4
I'm 3:16,22 5:3 6:7 10:4 16:6

**J**
J 1:9
January 1:7 9:23
JON 1:21
Judge 1:13 3:8 16:9
Judge's 4:11
judgment 5:13,16,20,25
jury 3:8,9,13,16,19 4:8,9,11 5:6,9 5:11,15,18,19,20

**K**
Kam 1:21
kind 14:8
KIRTZ 1:16
knew 7:23
know 3:22 4:3,24 5:2 7:23 9:12 10:21 11:11 13:11 14:4 15:8 16:9,10

**L**
LAUDERDALE 1:2,7
law 6:19,22 13:21,21
left 8:6 11:11
legally 3:7
LENDING 1:8
let's 5:5 7:4 13:15
liability 7:3,4,15,20
Liggins's 7:9,15
LLC 1:8,21
loan 8:12 11:10
loans 10:11
locate 15:8
location 15:14
look 7:9 9:1,1,24 10:6,6
looked 9:22
looking 12:9

**M**
MAGISTRATE 1:13
Maglore 15:4
MARIE 2:1 17:14,15

**material** 5:21
**matter** 4:25 5:1 12:16 17:12
**mean** 12:14 14:6,24
**mentioned** 12:24 15:18
**mercy** 9:9
**Miami** 2:3,3 17:17,18
**mill** 14:1,3
**mind** 14:18
**mischaracterized** 10:11
**misdirected** 13:6,11,16
**misleading** 10:17
**misperceptions** 12:21,22,23 13:2 13:2
**missing** 5:22 13:9 14:11
**modification** 11:10
**modifications** 8:13
**moment** 4:3
**MONDAY** 1:8
**mortgage** 10:11,19
**motion** 1:11 3:25 4:17 5:12,16,19 5:24

**N**

**NE** 1:17
**neatly** 14:9
**necessarily** 14:24
**need** 7:20 8:5,14 11:4,5
**needed** 16:1
**never** 12:20,22 13:9 15:17
**November** 9:23 15:5
**number** 11:13
**numbers** 10:6 12:14

**O**

**obligations** 14:2
**obvious** 8:8,20,21
**offices** 15:8,12,13
**Official** 2:2 17:16
**ones** 13:24
**opining** 5:7
**opportunistic** 15:24
**opposed** 13:3
**order** 7:10 8:18 12:2,17 15:2 16:23

**P**

**Palm** 1:22
**part** 4:11 5:6,9,17 7:8
**parties** 14:4,21
**party** 6:2
**paying** 13:22,23
**payments** 10:19
**Peachtree** 1:17
**penalty** 7:2
**people** 9:2 10:9,15,18 11:13 14:7 16:17
**person** 16:18,20
**personally** 14:16,20
**PGA** 1:22
**phase** 7:2,4
**phone** 10:6
**PI** 7:18
**place** 9:4 10:5 11:7
**plaintiff** 1:5,15 9:10
**PLAINTIFF'S** 1:12
**point** 6:22 12:5,14,17 14:6,12 15:3 15:16
**pointed** 15:19
**Pompano** 15:13
**position** 4:13 5:25
**pre** 7:2
**preconceptions** 12:15
**preliminary** 7:10,20 8:8 10:22,23
**presented** 10:24
**preservation** 14:3
**preserve** 13:24
**President** 7:17,17 8:10
**pretty** 12:9
**prevent** 3:7
**probably** 12:14
**problem** 10:16
**proceedings** 17:9,12
**promised** 10:9
**proper** 16:17
**PROSECUTION** 1:11
**prove** 8:1 10:12,14,15
**provide** 8:12 11:20 16:23
**provided** 16:18
**provision** 12:2,3
**purpose** 7:22,22 13:7
**purposefully** 11:15
**purposes** 4:23 5:5 15:15
**put** 7:4 13:13 17:2
**P.I** 13:22
**p.m** 17:9

**Q**

**question** 4:5,20 6:4 11:6 12:5 14:22,24 15:2
**questions** 11:22

**R**

**R** 17:10
**rare** 12:12
**rates** 11:10
**read** 9:2
**realize** 15:10
**really** 4:4 12:18
**REALTIME** 1:25
**reason** 3:5 4:7,9,10 5:9,14 10:21 14:15
**reasonable** 9:15
**REBUTTAL** 1:12
**receiver** 12:21 13:6 14:6,7
**receivers** 13:12
**recess** 17:8
**recommending** 3:8
**reconstructed** 3:6
**record** 7:8 8:7 16:16
**records** 11:24
**redress** 3:15
**reduce** 10:10
**reduced** 10:19
**refer** 8:7
**regard** 17:1
**regarding** 16:23
**regardless** 4:13 13:1
**relief** 13:19 15:15
**remedies** 4:25
**REPORTED** 2:1
**Reporter** 2:2 17:16
**representative** 9:18 11:1
**represented** 15:6
**required** 12:3,6,15
**resolve** 14:22
**resolved** 3:9
**respect** 3:9
**respond** 16:9
**restate** 4:5
**right** 3:2 4:1,16 10:4,19 11:16 16:4
**risk** 6:4,24
**ROBIN** 1:12 2:1 17:14,15
**robinc1127@aol.com** 2:4 17:18
**ROSENBAUM** 1:12
**RPR** 17:14,15
**RPR-CM** 2:1
**rules** 13:23
**ruling** 17:7
**run** 14:1,3

**S**

**S** 17:14
**sadly** 16:14,15
**Salesforce** 8:25 9:1,14,19,22 10:25 11:6 13:7,17 15:19,20,21,22,23 16:7,18,21
**sampling** 9:18 11:2 12:9
**satisfied** 9:3 11:14
**saw** 13:5
**saying** 4:16 16:7
**scrub** 12:2
**SEAN** 1:8
**see** 9:3,22
**seen** 16:7
**sending** 15:4
**sent** 15:7,9
**servers** 12:11 13:8,9,11,17 15:17 15:18
**set** 4:22
**shell** 6:13
**shouldn't** 11:25
**showing** 7:22
**Sinasohn** 1:16 3:3,12,18 4:5,10,17 5:12,23 6:12,17 7:8 8:23 9:17 10:5,20 11:18 12:19 13:4,13,16 14:12 15:1 16:7,16 17:4
**single** 12:6,16
**situation** 12:9,12
**sorry** 3:16,22 5:3 6:7 10:4 16:6
**sort** 7:2
**sounded** 16:19
**SOUTHERN** 1:1
**sowed** 15:25
**stand** 13:13,13
**start** 3:3 11:7
**statements** 6:17 7:5,12
**States** 1:1,13 2:2 17:16
**Ste** 2:3 17:17
**story** 16:10,10
**Street** 1:17
**submitted** 4:9 5:11,14,18 7:10
**substantially** 8:12 10:10,10,18
**success** 11:10
**suffice** 7:7 12:11
**Suite** 1:18
**summary** 5:13,16,19,25
**supplemental** 7:11
**supposed** 11:24
**supposing** 7:3
**sure** 3:12 4:7 16:10
**survive** 5:12,15,19

**T**

**T** 17:10,10
**take** 17:5
**taken** 16:12
**talk** 7:4 12:25
**talking** 12:13,24 14:2
**tell** 8:5,14,18 9:7 13:8,18
**telling** 10:18
**testified** 11:8 13:10
**testify** 16:18
**testifying** 16:21
**testimony** 16:8 17:3
**thank** 3:2 16:4 17:8
**that's** 3:20 7:1 9:3 10:14 11:11 12:14,17,17 14:25 15:16 16:8
**thereabouts** 9:20
**there's** 3:18
**thing** 3:4 4:14 11:11 14:12
**things** 8:7 9:7 14:25
**think** 4:19 8:23,25 9:5,17 11:3,6,12 11:14,14,21 12:5,8,12 13:4,4 14:11 15:22 17:4
**third** 14:21 15:13
**thought** 14:23 16:1
**time** 6:8 10:23 14:6 15:10 16:12
**told** 10:15 12:20 13:10,13 15:17
**top** 3:23 5:3
**TOTAL** 1:25
**Trade** 1:4,17
**TRANSCRIPT** 1:11
**transcription** 1:25 17:12
**transferred** 14:20,21
**triable** 5:6,9,24 6:1
**trial** 4:22
**tried** 3:20 4:7,8,14
**trier** 3:13,16 4:12 5:15
**true** 11:21
**trying** 14:17
**type** 14:10

**U**

**uncertainty** 6:3,5,24,24
**understand** 11:25 12:4 14:17,21 16:22
**understanding** 3:18,19,21 7:21 9:19,20
**unintelligible** 14:10
**United** 1:1,13 2:2 17:16
**UNIVERSAL** 1:8
**unusual** 12:9
**use** 6:18,19,23 8:19 9:22 11:2
**usual** 14:8

**V**

**Vice** 7:17
**view** 15:3
**virtually** 10:15
**vs** 1:7

**W**

**want** 6:7 13:13
**wanted** 9:13 13:12
**wasn't** 16:25
**waste** 6:8
**way** 4:14,16 5:7 15:9,12 16:13,14
**ways** 16:2
**went** 12:7
**what's** 8:6
**White** 7:16
**Wilkie** 2:2 17:17
**witnesses** 9:16
**words** 16:25
**work** 9:16
**wouldn't** 4:11 12:11
**wrong** 10:17

**Y**

**you've** 16:12

**Z**

**ZAUSNER** 1:8,8
**Zloch** 3:8

**0**

**08S67** 2:3 17:17
**09-82322-CIV-ZLOCH/ROSENB...** 1:3

**1**

**1st** 9:23
**1500** 1:18
**17** 7:13
**17,000** 9:20,22 16:7
**18** 7:17
**19** 7:11,15
**19th** 9:23

**2**

**2** 7:13
**2nd** 1:22
**2,000** 12:7
**20th** 15:5
**2009** 9:23
**2011** 1:7
**205** 1:23
**225** 1:17

**3**

**30303-1729** 1:18
**305/523-5659** 2:3 17:18
**305/523/5639** 2:4
**31** 1:7
**33128** 17:18
**33128-7792** 2:3
**33418** 1:22
**37** 7:11,16

**4**

**4** 1:13
**400** 2:3 17:17
**404/656-1366** 1:18

**5**

**5:45** 17:9
**500,000** 9:16,19
**5100** 1:22
**561-630-6727** 1:23

**9**

**9:30** 1:8